FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

2015 NOV 13  P 4: 07

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| **NICOLE P. ERAMO** | ) |
| | ) |
| **Plaintiff** | ) **Case No.** 1:15 MC 35 . |
| | ) GBL IDD |
| **v.** | ) |
| | ) **Underlying litigation:** |
| **ROLLING STONE LLC,** | ) *Eramo v. Rolling Stone, LLC, et al.,* |
| **SABRINA RUBIN ERDELY, and** | ) **Case No. 3:15-cv-00023-GEC, in the** |
| **WENNER MEDIA LLC,** | ) **United States District Court for the** |
| | ) **Western District of Virginia** |
| **Defendants.** | ) |

**NICOLE ERAMO'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO
COMPEL NONPARTY RESPONDENT JACKIE'S COMPLIANCE WITH RULE 45
SUBPOENA**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................4

CONCISE STATEMENT OF
FACTS........................................................................................................4

I.    Nicole Eramo's Underlying Defamation Action Against Rolling Stone.................................. 2

II.    The Subpoena to Jackie. ........................................................................................ 6

ARGUMENT....................................................................................................11

I.    The Subpoena Seeks Relevant Documents Within the Permissible Scope of Discovery..... 10

II.    Jackie Has No Valid Objections to the Subpoena. .............................................................. 13

CONCLUSION..................................................................................................19

# TABLE OF AUTHORITIES

*Cases*

*Amick v. Ohio Power Co.*, No. 2:13-cv-06593, 2013 WL 6670238, *1 (S.D.W.Va. Dec. 18, 2013) _____ 15

*Castle v. Jallah*, 142 F.R.D. 618, 620 (1992) _____ 9

*Cook v. Howard*, No. 11-1601, 2012 WL 3634451, at *6 (4th Cir. Aug. 24, 2012) _____ 14

*Eramo v. Rolling Stone LLC, et al.*, No. 3:15-cv-00023-GEC _____ 1

*HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 308 (2013)_____ 14

*Hyland v. Raytheon Tech. Serv's Co.*, 277 Va. 40, 46-47 (2009)_____ 15

*Rules*

34 CFR Part 99 _____ 16

Fed. R. Civ. P. 26(b)(1) _____ 9

Fed. R. Civ. P. 45(d)(2) _____ 15

Fed. R. Civ. P. 45(d)(2)(B)(i) _____ 9

Fed. R. Ev. 412(a) _____ 15

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), Movant Nicole Eramo, Plaintiff in the case of *Eramo v. Rolling Stone LLC, et al.*, No. 3:15-cv-00023-GEC, currently pending in the United States District Court for the Western District of Virginia, hereby files this Memorandum of Law in Support of her Motion to Compel Nonparty Respondent Jackie's Compliance with Rule 45 Subpoena. Movant Eramo requests an order directing Respondent "Jackie" to comply with the July 27, 2015 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (hereinafter, "the Subpoena") requiring the production of documents, which was served on counsel for "Jackie" on July 27, 2015 (attached hereto as Ex. A.) Respondent "Jackie" was the central figure and main source for an article published in *Rolling Stone* magazine in November 2014 entitled, "A Rape on Campus: A Brutal Assault and Struggle for Justice at UVA." The underlying defamation action alleges that Defendants Rolling Stone LLC, Sabrina Rubin Erdely, and Wenner Media LLC defamed Plaintiff Nicole Eramo in that article and in subsequent media statements by claiming that Eramo, an Associate Dean of Students at the University of Virginia, failed to respond to, and attempted to suppress, "Jackie's" claim that she was the victim of a gang rape at a fraternity at the University of Virginia. After the *Rolling Stone* article was published, "Jackie" and *Rolling Stone's* claims regarding "Jackie's" supposed sexual assault and subsequent interactions with Dean Eramo were critically examined by numerous entities — including the fraternity accused of perpetrating the assault, the *Washington Post*, the Columbia Journalism Review, countless other media entities, and the Charlottesville Police Department — and conclusively proven to be false.

Dean Eramo issued a valid and proper Rule 45 Subpoena to "Jackie," who resides in the Eastern District of Virginia. "Jackie," through her counsel, has refused to provide any

documents whatsoever in response.  Although the Rule 45 Subpoena at issue in the present

Motion was issued in "Jackie's" real name as required, counsel for "Jackie" has requested that

Dean Eramo refrain from revealing "Jackie's" full name in moving to compel compliance with

that Subpoena.  Despite the fact the "Jackie's" name has been widely published online, and

despite the fact that "Jackie" voluntarily chose to share an incontrovertibly false story with a

prominent national magazine, Dean Eramo has honored that request in yet another attempt to

cooperate in good faith.  The Respondent will therefore be referred to only as "Jackie" herein.

Dean Eramo's cooperation and good faith has not been reciprocated by Jackie's counsel,

necessitating the filing of the instant Motion to Compel Nonparty's Compliance with Rule 45

Subpoena.  Because the Subpoena seeks highly relevant documents and Jackie has not asserted

any meritorious objections to the Subpoena, the Subpoena should be enforced.

## CONCISE STATEMENT OF FACTS

### I.        Nicole Eramo's Underlying Defamation Action Against Rolling Stone.

On May 12, 2015, Nicole P. Eramo filed a defamation Complaint in the Circuit Court for

the City of Charlottesville against Defendants Rolling Stone, LLC, Wenner Media, LLC, and

Sabrina Rubin Erdely.  (May 12, 2015 Compl., *Eramo v. Rolling Stone LLC, et al.*, No. 3:15-cv-

00023-GEC (in the United States District Court for the Western District of Virginia) [Dkts. 14-1

and 14-2) (Attached as Ex. B).)  On May 29, 2015, Defendants removed the action to the United

States District Court for the Western District of Virginia.  (*See* May 29, 2015 Notice of Removal

of Action, *Eramo v. Rolling Stone LLC, et al.*, Case No. 3:15-cv-00023-GEC (United States

District Court for the Western District of Virginia) [Dkt. 1].)  The action is currently pending

before Chief Judge Glen E. Conrad.

Plaintiff Nicole Eramo is an Associate Dean of Students at the University of Virginia

("UVA").  (Compl. ¶ 17.)  Defendants Rolling Stone LLC and Wenner Media LLC are the

publishers of *Rolling Stone* magazine. (*Id.* ¶¶ 18, 20.)  Defendant Sabrina Rubin Erdely is a reporter and Contributing Editor for *Rolling Stone*. (*Id.* ¶ 19.)  On November 19, 2014, Defendants published an article entitled, "A Rape on Campus: A Brutal Assault and Struggle for Justice at UVA" (hereinafter, "the Article"). (*Id.* ¶ 45.)

The Article begins with a graphic depiction of the violent gang rape of a University of Virginia ("UVA") freshman — called "Jackie" in the Article — at a fraternity house at UVA, which the article claims occurred on September 28, 2012. (*Id.* ¶ 46.)  The Article claims that Jackie was invited to a fraternity date function by a coworker at the UVA student pool, who then lured Jackie in a bedroom upstairs and coordinated an assault in which seven men took turns sexually assaulting Jackie over the course of three hours on top of a pile of broken glass. (*Id.* ¶ 47.)  None of the alleged rapists are identified in the Article. (*Id.* ¶ 83.)  According to the Article, a bloodied and bruised Jackie left the fraternity house at 3 a.m. and called several friends, who urged her not to report this violent gang rape because they worried it could hurt their social standing at UVA. (*Id.* ¶¶ 48-50.)

The Article then goes on to describe Jackie's interactions with Dean Eramo, who was the head of UVA's Sexual Misconduct Board. (*Id.* ¶¶ 54-71.)  While Jackie is cast as the protagonist of the Article, Dean Eramo is cast as the villain.  The Article claims that after Jackie reported her assault to UVA, Dean Eramo abused Jackie, discouraged Jackie from reporting her gang rape, intentionally coddled Jackie into doing nothing, and took no action in response to Jackie's report — all, allegedly, to protect UVA's reputation. (*Id.* ¶¶ 54-65.)  In subsequent media appearances, the reporter, Ms. Erdely, further claimed that Dean Eramo "brushed off" Jackie, "did nothing," sought to "suppress" Jackie's sexual assault, failed to report it to police, and "discouraged" Jackie from formally pursing the allegations. (*Id.* ¶¶ 77-80.)

The Article caused a media firestorm upon its release. (*Id.* ¶ 1.) It was viewed online over 2.7 million times, was widely shared on social media sites like Facebook, and was discussed ad nauseum on television and radio talk shows. (*Id.*) The public was outraged that a major university would seek to conceal a violent sexual assault in order to avoid the consequences of bad publicity. As a result of *Rolling Stone's* Article, Dean Eramo's sterling reputation as a fierce advocate and supporter of sexual assault victims was destroyed. (Compl. ¶¶ 26-34, 202-207.) Dean Eramo was excoriated on television and on the Internet, and received vicious and threatening emails from strangers accusing her of intentionally suppressing student rapes in order to protect UVA's reputation. (*Id.* ¶¶ 202-207.)

Eventually, the Article — and key components of Jackie's story forming the centerpiece of the Article — were proven to be almost entirely fictional. Within two weeks of its publication, the fraternity named as the site of Jackie's gang rape produced evidence demonstrating that there was no "date function" or any other gathering at the fraternity on the night that *Rolling Stone* claimed the attack occurred, and that no members of the fraternity matched the description given of Jackie's chief assailant. (*Id.* ¶ 90.) During Erdely's media tour designed to capitalize on the publicity surrounding the Article, it became apparent that Erdely had not interviewed or attempted to interview any of the alleged attackers or the three friends that supposedly met with Jackie on the night of the assault. (*Id.* ¶¶ 85-88.) As more media outlets began to investigate, other components of Jackie's story fell apart, and evidence emerged that she invented and/or exaggerated key components of it to gain the sympathy of a man she was romantically interested in and to cover for her failing grades. (*Id.* ¶¶ 56, 93-94.) On December 6, 2014, a group of students familiar with Dean Eramo — including Jackie and other students who were interviewed by Erdely — wrote an open letter to the *Cavalier Daily*

newspaper decrying *Rolling Stone's* false portrayal of Dean Eramo and lauding her work on behalf of sexual assault victims. *(Id.* ¶179.)

On March 23, 2015, following a lengthy investigation, the Charlottesville Police Department issued a report stating that it found "no substantive basis of fact to conclude that an incident occurred that is consistent with the facts described in the November 19, 2014, Rolling Stone Magazine article." *(Id.* ¶ 125.) The report includes numerous details conclusively rebutting the claims made in the *Rolling Stone* Article. *(Id.* ¶¶ 107-125.) The police also noted that Jackie refused to speak with police or to cooperate with the investigation. *(Id.* ¶ 116.)

The Charlottesville Police further demonstrated that *Rolling Stone's* claims about Dean Eramo were entirely false. When Jackie initially met with Dean Eramo, Jackie related a story that was different from the tale she told *Rolling Stone*. *(Id.* ¶ 108.) Jackie refused to identify the alleged perpetrators or where the assault supposedly occurred, and was adamant that she did not want to formally report her sexual assault to UVA or the police. *(Id.* ¶ 109.) Far from seeking to suppress Jackie's sexual assault, Dean Eramo urged Jackie to report the purported assault to police, and twice arranged for detectives to meet with Jackie in Dean Eramo's presence. *(Id.* ¶¶ 109-113.) However, when Jackie learned that the police wanted to investigate whether her claims were true, she refused to cooperate and insisted that she did not want the police to initiate an investigation. *(Id.* ¶¶ 112-113.)

On December 5, 2014 *Rolling Stone* issued a statement acknowledging "discrepancies" in Jackie's account, blaming Jackie for misleading Erdely, and claiming that their trust in Jackie had been "misplaced."[1] A report commissioned by *Rolling Stone* itself described the article as a

---

[1] *See* Krishnadev Calamur, *'Rolling Stone' Says Trust In Gang-Rape Accuser Was 'Misplaced'*, NPR (Dec. 5, 2014, 1:46 PM), *available at* http://www.npr.org/sections/thetwo-way/2014/12/05/368748289/rolling-stone-says-trust-in-gang-rape-accuser-was-misplaced.

"journalistic failure," and concluded that *Rolling Stone* "set aside or rationalized as unnecessary essential practices of reporting." (*Id.* ¶ 14.) Commentators have called the Article "a disgrace" and "bogus journalism." (*Id.*)

In her Complaint, Dean Eramo alleges that Rolling Stone LLC, Wenner Media LLC, and Sabrina Rubin Erdely defamed her by, among other things, claiming that she abused Jackie, claiming that she discouraged Jackie from sharing her story, claiming that she said UVA hides its rape statistics so as not to be seen as "the rape school," claiming that she "brushed off" Jackie, claiming that she "did nothing" in response to hearing Jackie's allegations, claiming that she did not report Jackie's allegations to the police, claiming that she sought to "suppress" Jackie's allegations, claiming that she encourages sexual assault victims to keep their rapes quiet, claiming that she did not act on Jackie's allegations in any way, and claiming that she met Jackie's allegations with "indifference." (*See generally* Compl.) Dean Eramo further alleges that Erdely and *Rolling Stone* purposely avoided evidence indicating that their statements about Dean Eramo were false, and in particular, ignored numerous "red flags" which indicated that Jackie was a fabulist and an unreliable source of information. (Compl. ¶¶ 9-11, 126-183.) In their Answer, *Rolling Stone* and Erdely deny that they acted with negligence or actual malice, and deny that they had any indications prior to publication that Jackie was an unreliable source. (*See generally* July 26, 2015 Answer, *Eramo v. Rolling Stone, LLC*, Case No. 3:15-cv-00023-GEC (United Stated District Court for the Western District of Virginia) [Dkt. 27]).)

II.     **The Subpoena to Jackie.**

On July 27, 2015, Dean Eramo served "Jackie" with a Subpoena pursuant to Federal Rule of Civil Procedure 45, demanding that she produce documents related to her communications with Erdely, *Rolling Stone*, and others regarding her sexual assault story and her interactions

with Dean Eramo that were the subjects of the Article.  The Subpoena sought the following categories of documents from Jackie, for the time period January 1, 2012 to the present:

1.      All communications between you and Erdely.

2.      All communications between you and Rolling Stone.

3.      All communications between you and Ryan Duffin relating in any way to an alleged sexual assault of you on the UVA campus.

4.      All communications between you and Kathryn Hendley relating in any way to an alleged sexual assault of you on the UVA campus.

5.      All communications between you and Alex Stock relating in any way to an alleged sexual assault of you on the UVA campus.

6.      All communications between you and Plaintiff Nicole Eramo.

7.      All communications between you and Emily Renda relating in any way to an alleged sexual assault of you on the UVA campus.

8.      All communications between you and Alex Pinkleton relating in any way to an alleged sexual assault of you on the UVA campus.

9.      All communications between you and Rachel Soltis relating in any way to an alleged sexual assault of you on the UVA campus.

10.     All communications between you and Sara Surface relating in any way to an alleged sexual assault of you on the UVA campus.

11.     All communications between you and the group known as "One Less" relating in any way to an alleged sexual assault of you on the UVA campus.

12.     All communications between you and UVA relating in any way to an alleged sexual assault of you on the UVA campus.

13.     All communications between you and the University of Virginia Police Department and/or the Charlottesville Police Department relating in any way to an alleged sexual assault of you on the UVA campus.

14.     All communications between you and any other person in which you reference in any way being the victim of an alleged sexual assault on the UVA campus.

15.     Any communications in which you refer or any other person refer to an individual named "Haven" or "Haven Monahan," including communications you authored or received while using the pseudonym "Haven Monahan" or while posing as an individual named "Haven Monahan."

16.    All communications between you and any other person relating to the Article.

17.    All internet, message board, email, and/or social media postings in which you reference in any way being the victim of an alleged sexual assault on the UVA campus.

18.    Your home and cellular phone records from July 1, 2014 to January 1, 2015 reflecting communications with Rolling Stone and/or Erdely.

19.    Text, SMS, MMS, and/or any social media messages authored by you or received by you relating in any way to any of the foregoing topics.

(Subpoena, Ex A. at 4-6.)

After counsel for Dean Eramo granted a generous extension of time to respond, counsel for Jackie served her objections to the Subpoena on October 14, 2015.[2]  (Oct. 14, 2015 Third Party Objections and Responses to Pl.'s First Set of Requests for Prod. of Documents (hereinafter, "Subpoena Response") (Attached as Ex. C).)   Jackie refused to provide any documents in response to the Subpoena.  On October 30, counsel for Dean Eramo responded to Jackie's Subpoena Response, explaining why Jackie's objections were meritless and why the documents sought by the Subpoena were highly relevant to the pending defamation action.  (Oct. 30, 2015 Letter from T. Clare to P. Pustilnik (Attached as Ex. D).)  Nevertheless, counsel for Dean Eramo offered to negotiate in good faith to limit the scope of certain categories of documents if others were produced.  (Id.) Dean Eramo further informed Jackie's attorneys that if they persisted in their refusal to produce and documents and refused to negotiate in good faith, Dean Eramo would be forced to file a motion to compel.  (Id.)  On November 10-12, 2014, counsel for Dean Eramo and several counsel for Jackie held several telephone conferences to discuss the subpoena.  The parties were unable to reach any agreement, and Jackie to date has refused to produce any documents in response to the Subpoena.

---

[2] Under Rule 45, Ms. Jackie's objections to the subpoena should have been due within 14 days.

Because Jackie is a resident of Stafford, Virginia and compliance with the Subpoena was required in the Eastern District of Virginia, Dean Eramo has filed the instant Motion in this Court seeking an order directing Jackie to comply with the subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B)(i).

## ARGUMENT

"Jackie" knowingly and voluntarily told a false story to a reporter for a major national magazine, with full knowledge that her claims would be nationally published and widely read. She and her story of sexual assault were the centerpieces of the defamatory Article that is the subject of Dean Eramo's defamation action, and Jackie has no valid basis for resisting a lawful subpoena seeking documents that are highly relevant to that action. Accordingly, she should be ordered to produce the requested documents.

Under Rule 45, a party to an action may serve a nonparty with a subpoena demanding the production of documents. Fed. R. Civ. P. 45(a). The scope of permissible discovery via a Rule 45 subpoena is coextensive with that of a request for production from a party under Rule 34, which is to say that discovery may be had from a nonparty as authorized by Rule 26. *Castle v. Jallah*, 142 F.R.D. 618, 620 (1992). Pursuant to Rule 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any parties claims or defenses," and "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1), *see also Castle*, 142 F.R.D. at 620. Moreover, the burden is on the nonparty objecting to the subpoena to show why discovery should not be allowed. *Castle*, 142 F.R.D. at 620.

The Subpoena is proper and valid, and it should be enforced. First, as demonstrated below, each category of documents sought from Jackie is highly relevant to the claims and

defenses in the defamation action pending in the Western District of Virginia. Second, Jackie's objections to the Subpoena — which are primarily based on the faulty premise that she is immune from discovery because she is not a party to the action — are meritless and should be rejected. Accordingly, Jackie should be directed to comply with the Subpoena.

## I.    The Subpoena Seeks Relevant Documents Within the Permissible Scope of Discovery.

All of the documents sought by the Subpoena are relevant to the pending defamation action. Demand No. 1 seeks Jackie's communications with Sabrina Rubin Erdely, the reporter who wrote the Article, while Demand No. 2 seeks Jackie's communications with other *Rolling Stone* personnel. (Subpoena, Ex. A ¶¶ 1, 2.) These communications are relevant to the issues of whether *Rolling Stone's* statements regarding Jackie's alleged assault and her interactions with Dean Eramo were false, whether they were made with negligence/actual malice, whether *Rolling Stone* and Erdely knew or should have known that Jackie was not a reliable source, whether Rolling Stone and Erdely purposely ignored "red flags" demonstrating that Jackie was an unreliable source of information, whether *Rolling Stone* and Erdely purposely avoided investigating whether Jackie's claims were true, and whether the statements in the Article are of and concerning Dean Eramo. (*See* Compl. ¶¶ 5-10.) These communications are also highly relevant to *Rolling Stone* and Erdely's anticipated defense that they relied on Jackie as a source and had no subjective doubts about her veracity.

Demands Nos. 3-5 seek Jackie's communications with the three individuals that are depicted in the Article as having met with Jackie immediately after her alleged sexual assault. (Subpoena, Ex. A ¶¶ 3-5.) Although they were aware of these individuals, Erdely and *Rolling Stone* intentionally chose not to interview them before publishing the Article. (Compl. ¶¶ 93-97.) In media interviews following the publication of the Article, these individuals have stated

that the Article's depiction of this meeting is wildly inaccurate, including as to such details as where it occurred, what was said, what Jackie claimed had happened to her, and the extent of Jackie's injuries (or lack thereof).[3] These individuals have also publicly indicated that they received emails from Jackie at the time that cast serious doubt on her the story of sexual assault reported in *Rolling Stone*, suggest that the person claimed to be the ringleader of this assault does not exist, and further suggest that Jackie may have even used fake email accounts under the pseudonym "Haven Monahan" to pose as her nonexistent attacker in an effort to convince her three friends that the claimed sexual assault occurred.[4] These communications are highly relevant to the issue of falsity because they will tend to demonstrate that Jackie was an unreliable source for information. They are also relevant to the issues of negligence, actual malice, failure to investigate, subjective doubt in the credibility of a source, and purposeful avoidance of the truth, because they will demonstrate that *Rolling Stone* should have and would have learned of Jackie's bizarre and inexplicable behavior if they had not purposely chosen not to interview these key witnesses. (*See* Compl. ¶¶ 93-97.)

Demand No. 6 seeks Jackie's communications with Dean Eramo regarding her alleged sexual assault, while Demand No. 12 seeks Jackie's communications with other UVA officials regarding her alleged sexual assault. (Subpoena, Ex. A ¶¶ 6, 12.) The relevance of these communications is self-evident because Erdely and *Rolling Stone* claimed that Dean Eramo discouraged Jackie from reporting her assault, did nothing in response to Jackie's allegations, and actively sought to suppress Jackie's supposed sexual assault. Jackie's communications will

---

[3] *See, e.g.*, Sara Ganim and Ray Sanchez, "*Friends' accounts differ significantly from victim in UVA rape story*," CNN.com (Dec. 17, 2014, updated 9:56 AM), *available at* http://www.cnn.com/2014/12/16/us/uva-rape/.

[4] *See id. See also*, Chuck Ross, *Here Is What The UVA Student Behind The Rolling Stone Article Wrote About A Friend She Had A Crush On*, The Daily Caller (Dec. 18, 2014, 10:52 AM), *available at* http://dailycaller.com/2014/12/18/what-uva-student-jackie-wrote-in-email-about-friend-she-liked/.

demonstrate the falsity of these claims.  Demands Nos. 7-11 seek Jackie's communications with several individuals and a campus group of which she was a member regarding her alleged sexual assault.  (*Id.* ¶¶ 7-11.)  All of these individuals are named in the Article and were interviewed by Erdely for the Article.  These communications are relevant to the issue of falsity, and to the issues of negligence and actual malice to the extent they discuss Erdely, *Rolling Stone*, and/or the Article.  They are also relevant to *Rolling Stone's* anticipated defense that these individuals lent credibility to Jackie's story.

Demands No. 13 seeks communications between Jackie and the Charlottesville and/or University of Virginia police departments regarding her alleged sexual assault.  (Subpoena, Ex. A ¶ 13.)  As noted above, *Rolling Stone* and Erdely falsely claimed that Dean Eramo did nothing about Jackie's sexual assault allegations, that she sought to suppress them, and that she discouraged Jackie from reporting them.  In fact, as the Charlottesville Police Department has publicly stated, Dean Eramo twice arranged for Jackie to meet with detectives in order to facilitate an investigation into Jackie's claims, but Jackie refused to cooperate with the police.  (Compl. ¶¶ 111-113.)  The communications sought by this demand are thus plainly relevant to the issues of falsity, negligence, and actual malice.  Additionally, Demands No. 14, 16, 17, and 18 seek Jackie's communications with any other persons in which she discussed the Article or claimed to be the victim of a sexual assault on the UVA campus.  (Subpoena, Ex. A ¶¶ 14, 16, 17-18.)  Such communications are relevant for all of the reasons stated above.

Demand No. 15 seeks any communications in which Jackie refers to a person named "Haven Monahan," as well as any communications Jackie sent or received while using the alias "Haven Monahan."  (Subpoena, Ex. A ¶ 15.)  As noted above, Jackie apparently told friends at UVA that supposed ringleader of her assault was named Haven Monahan.  (Compl. ¶¶ 93-96.)

She encouraged friends to communicate with email addresses and cell phone numbers that she claimed belonged to Haven Monahan. (*Id.*)  Since the Article was published, it has become apparent that there is no person named Haven Monahan — as determined by the Charlottesville Police Department — and that such communications were in fact pseudonymously sent by Jackie herself in a bid to convince her friends that she was the victim of a sexual assault. (*Id.* ¶¶ 93-96, 122.)  Such communications are relevant to the issue of falsity since they will tend to demonstrate that Dean Eramo did not seek to cover up a sexual assault.  They will also tend to demonstrate that Jackie was not a reliable source for *Rolling Stone* to rely upon for its defamatory article.  Finally, demands Nos. 17 and 19 seek social media posts and text messages authored by Jackie regarding the same topics. (*Id.* ¶¶ 17, 19.)

## II.    Jackie Has No Valid Objections to the Subpoena.

None of Jackie's objections to the Subpoena and the categories of documents sought therein have merit.  First, Jackie argues that because she is not a party to the case, she should not be subject to discovery.  (*See* Subpoena Response at 3-4.)  This is not a valid objection to a subpoena issued pursuant to Rule 45, which is of course designed to facilitate discovery from third parties.  Next, Jackie asserts various claims of privacy as a basis for refusing to produce documents.  (*See, e.g.*, Subpoena Response at 4-16.)  These objections lack merit, particularly in light of Jackie's voluntary decision to share her story with a prominent magazine.

Jackie's primary arguments in her Subpoena Response are that she should not be required to comply with the Subpoena because she "is not a party to the case," and because Dean Eramo does not allege in her Complaint "that any statement made by Jackie was defamatory." (Subpoena Response at 3.)  These contentions are, simply put, completely irrelevant. Rule 45 by its plain terms authorizes parties to a civil action to seek document discovery from nonparties. Fed. R. Civ. P. 45(e)(1).  Moreover, "the scope of discovery allowed under a subpoena is the

same as the scope of discovery allowed under Rule 26." *HDSherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 308 (2013)), *citing Cook v. Howard*, No. 11-1601, 2012 WL 3634451, at *6 (4th Cir. Aug. 24, 2012). Rule 26 permits discovery regarding any non-privileged matter that may be relevant to a party's claims or defenses in the pending action. Fed. R. Civ. P. 26(b)(1). As demonstrated in detail above, Jackie is the primary subject of the Article that Plaintiff alleges to be defamatory. Jackie's interactions with Dean Eramo and *Rolling Stone*, and her communications regarding these topics, are highly relevant to the claims and defenses in the defamation action. Regardless of whether any of Jackie's statements to *Rolling Stone* are alleged to be defamatory, whether the Article accurately depicts Jackie's sexual assault and her supposed suffering at the hands of Dean Eramo are key issues in that case.

Among other things, Plaintiff must prove that *Rolling Stone's* statements about Dean Eramo's treatment of a supposed gang rape victim are false and that *Rolling Stone* made these statements negligently and/or with reckless disregard for whether they were true. *See Hyland v. Raytheon Tech. Serv's Co.*, 277 Va. 40, 46-47 (2009) (identifying the elements of a defamation claim under Virginia law). The documents sought by the Subpoena will demonstrate that *Rolling Stone's* story about Jackie is false and that, to the extent *Rolling Stone* claims it was relying on Jackie's credibility, *Rolling Stone* knew or should have known that Jackie was not a reliable source on which to base the Article. Simply put, Jackie's communications are highly relevant to the defamation case for myriad reasons, and the fact that she is not a named defendant in that action is entirely irrelevant to the question of whether she possesses relevant information that is discoverable via a Rule 45 subpoena.

Nor can Jackie claim that the Subpoena creates too great a burden on her as a nonparty. (*See generally* Subpoena Response (objecting to nearly all demands on the grounds that they are

"unduly burdensome").) For the most part the Subpoena will require no more than standard, simple searches of her emails and other electronic messages. Jackie is being represented on a pro bono basis by both the Virginia Legal Aid Society and Stein Mitchell Cipollone Beato & Missner LLP, a major Washington, D.C. law firm that has the experience and resources to review and produce a modest amount of documents. Unsurprisingly, Jackie's Subpoena Response fails to offer any explanation as to why responding to Dean Eramo's subpoena would be unduly burdensome. *See Amick v. Ohio Power Co.*, No. 2:13-cv-06593, 2013 WL 6670238, *1 (S.D.W.Va. Dec. 18, 2013) (a party asserting an "unduly burdensome" objection bears the burden of demonstrating how the discovery sought is overly burdensome).

Next, Jackie asserts various objections in her Subpoena Response that collectively amount to an argument that the Subpoena invades her privacy. (*See, e.g.*, Subpoena Response at 6.) This argument fails for several reasons. Most importantly, the plain fact is that Jackie chose to make herself and her alleged sexual assault the subject of an article in a national magazine. She did so knowing that the Article would be widely published in print and online, and would be widely read. She cannot now claim that she has maintained this information as private or confidential. Nor is an individual's mere desire to avoid production of potentially embarrassing materials a valid grounds for objecting to or quashing a Rule 45 subpoena. *See* Fed. R. Civ. P. 45(d)(2).

Jackie's reliance on Federal Rule of Evidence 412 is also misplaced. Rule 412 concerns the *admissibility* of evidence of sexual history in a case involving sexual misconduct where the evidence is offered to prove that "a victim engaged in *other* sexual behavior." Fed. R. Ev. 412(a) (emphasis added). This rule of evidence plainly has no applicability to Plaintiff's subpoena. Federal Rule of Evidence 412 is a rule that addresses admissibility of evidence at trial; it has no

bearing on Plaintiff's Subpoena issued pursuant to the Federal Rules of Procedure, which by their plain terms permit discovery of evidence that is not ultimately admissible. Fed. R. Civ. P. 26(b)(1). Moreover, all of Plaintiff's document demands concern the supposed sexual assault that is the subject of the Article, and none are concerned with, or request information regarding, whether Jackie engaged in any *other* unrelated sexual behavior.

Finally, Jackie's claim of privilege based on the Family Educational Rights and Privacy Act (FERPA) is similarly unavailing.[5]  FERPA applies only to subpoenas directed to an educational agency or institution, and has no bearing on a subpoena directed to an individual like Jackie. *See generally* 34 CFR Part 99. And to the extent that Jackie has any privacy interest in the documents sought, it should be noted that the Court has already entered a protective order in the defamation action governing the use and dissemination of discovery documents. (Sept. 8, 2015 Stipulated Protective Order, *Eramo v. Rolling Stone LLC, et al.,* No. 3:15-cv-00023-GEC (United States District Court for the Western District of Virginia) [Dkt. 34].) Jackie and her counsel are free to designate and defend any sensitive documents as confidential pursuant to that order.

## CONCLUSION

For the foregoing reasons, Nicole Eramo, Plaintiff in the case of *Eramo v. Rolling Stone LLC, et al.,* No. 3:15-cv-00023-GEC, currently pending in the United States District Court for the Western District of Virginia, respectfully requests that the Court issue an order directing Jackie to comply with the Subpoena.

---

[5] Despite objecting to numerous categories of documents based on claims of privilege, Jackie has not produced a privilege log as required by Federal Rule of Civil Procedure 45(e)(2).

Dated:  November 13, 2015                Respectfully submitted,

By: _____

Thomas A. Clare (VA Bar No. 39299)
Elizabeth M. Locke (VA Bar No. 71784)
CLARE LOCKE LLP
902 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com

*ATTORNEYS FOR PLAINTIFF NICOLE ERAMO*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Nicole Eramo's Memorandum of Law in Support of her Motion to Compel Nonparty Respondent Jackie's Compliance with Rule 45 Subpoena was served on the below counsel of record November 13, 2015, via email and U.S. mail.

Palma Pustilnik
Staff Attorney
Central Virginia Legal Aid Society
1000 Preston Avenue, Suite B
Charlottesville, VA 22903
Telephone: (434) 327-1443
Fax: (434) 296-5731
Email: palma@cvlas.org

Pat A. Cipollone
Stein Mitchell Cipollone Beato & Missner LLP
1100 Connecticut Avenue N.W., Suite 1100
Washington, D.C. 20036
Telephone: (202) 661-0950
Fax: (202) 296-8312
Email: pcipollone@steinmitchell.com

*Attorneys for Nonparty Respondent "Jackie"*

Michael John Finney
William David Paxton
Gentry Locke Rakes & Moore
P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9373
Telephone: (540) 983-9334
Fax: (540) 983-9400
Email: finney@gentrylocke.com
Email: paxton@gentrylocke.com

Elizabeth A. McNamara
Samuel M. Bayard
Davis Wright Tremaine LLP
1251 Avenue of the Americas
21st Floor
New York, New York 10020

Telephone: (212) 489-8230
Fax: (212) 489-8340
Email: lizmcnamara@dwt.com
Email: samuelbayard@dwt.com

Alison B. Schary (admitted pro hac vice)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4248 Fax: (202) 973-4448
E-mail: alisonschary@dwt.com

*Attorneys for Defendants Rolling Stone LLC,*
*Sabrina Rubin Erdely, and Wenner Media LLC*


Dated: November 13, 2015            By: _____
                                          Thomas A. Clare