**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

NICOLE P. ERAMO              )
                                         )
                                         )
                ***Plaintiff***,         )       **Case No. 1:15-mc-00035**
                                         )               **GBL-IDD**
      v.                            )
                                         )
ROLLING STONE LLC, *et al.*     )
                                         )
              ***Defendants***.     )

---

**NON-PARTY RESPONDENT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL PRODUCTION**

---

# TABLE OF AUTHORITIES

**Cases**

*Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, No. 1:12CV27, 2014 WL 6686727 (M.D.N.C. Nov. 26, 2014) ................................................................. 28

*Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985) ............................................. 30

*Cook v. Howard*, 484 F. App'x 805 (4th Cir. 2012) .................................................... 24

*Doe v. Salisbury Univ.*, No. CIV. JKB-15-517, 2015 WL 5005811 (D. Md. Aug. 21, 2015) ..... 15

*E.E.O.C. v. Donohue*, 746 F. Supp. 2d 662 (W.D. Pa. 2010) ................................. 10, 11

*Hatfill v. New York Times Co.*, 242 F.R.D. 353, 356 (E.D. Va. 2006) ……………………….29

*Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.*, 171 F.R.D. 179 (D. Md. 1997) .. 11

*In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606 (E.D. Va. 2008) .................... 26

*James Madison Project v. C.I.A.*, No. 1:08CV1323GBL, 2009 WL 2777961 (E.D. Va. Aug. 31, 2009) ............................................................................................... 27

*Jordan v. Kollman*, 269 Va. 569, 612 S.E.2d 203 (2005) ........................................... 30

*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011) ...................................... 31

*Macklin v. Mendenhall*, 257 F.R.D. 596 (E.D. Cal. 2009) .......................................... 11

*Myers v. AT&T, Inc.*, No. 5:12-CV-00714-BO, 2015 WL 4566940 (E.D.N.C. July 28, 2015) ... 24

*Priest v. Rotary*, 98 F.R.D. 755 (N.D. Cal. 1983) ...................................................... 11

*Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451 (E.D.N.C. 2005) .................................... 24

*Sheffield v. Hilltop Sand & Gravel Co.*, 895 F. Supp. 105 (E.D. Va. 1995) ........................ 10, 18

*Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237 (E.D. Va. 2012) ......................................... 25

*Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013) ......................... 13

*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) ............................................... 26

*Wolak v. Spucci*, 217 F.3d 157 (2d Cir. 2000) ..................................................... 10, 16

*Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449 (D.D.C. 2002) .............................................. 28

*Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449 (D.D.C. 2002) .............................................. 24

**Statutes**

18 U.S.C.A. § 3771 ........................................................................................... 9

20 U.S.C. § 1232g ........................................................................................... 21

Va. Stat. § 63.2-104.1(A) ................................................................................. 20

**Rules**

34 CFR Part 99 ........................................................................................................................ 21

Fed. R. Civ. P. 26 ............................................................................................................... 10, 23

Fed. R. Civ. P. 45 ................................................................................................................... 23

Fed. R. Evid. 412 ................................................................................................................... 10

## INTRODUCTION

Plaintiff Nicole Eramo, the associate dean of students at the University of Virginia, asks this Court to impose intrusive and burdensome civil discovery on a non-party sexual assault victim – one who Dean Eramo counseled – in pursuit of irrelevant evidence and in violation of various legal privileges and protections.  The Court should decline Dean Eramo's request.  ***First***, this Court should decline to adjudicate the merits of Dean Eramo's motion.  As set forth in a separate Motion [Dkt. 6], Respondent requests the Court, in accordance with Federal Rule of Civil Procedure 45(f), transfer this action to the Western District of Virginia, the presiding court that issued the subpoena.  Dean Eramo has no grounds on which to oppose such a request – in fact, her opposition to transfer underscores the infirmities in the positions she takes here, which she is apparently unwilling to have adjudicated by the court in which this matter is pending.

***Second***, even if this Court decides to consider Dean Eramo's motion, the motion substantively lacks any merit and should be denied.  Plaintiff would not be entitled under the Federal Rules to the intrusive and burdensome discovery sought here from a party to an action – much less a third party – ***even if*** the discovery were somehow relevant.  It is not.  Dean Eramo's overbroad, unduly burdensome requests seek evidence of no relevance to the claims at issue in this case, from a non-party sexual assault victim, whose privacy and dignity interests are afforded even greater protections than those otherwise afforded to all third parties under the Federal Rules.

Furthermore, Dean Eramo has moved to compel this burdensome, intrusive and irrelevant production from a non-party sexual assault victim prior even to receiving a production from the actual parties in the case, and with the close of discovery more than four months away.  Her far ranging requests, by their very terms, sweep in "all communications" between Respondent and medical and/or counseling professionals, other sexual assault victims, a sexual assault victim

support group on UVA's campus, and Respondent's own friends and family, about numerous broad and ill-defined topics, such as communications "relating to the Article" or that "reference in any way being the victim of an alleged sexual assault."

The communications Dean Eramo seeks do not have any relevance to her claims, and Respondent's right to dignity and privacy, along with Federal and state law protections including, but not limited to, the Federal Rules of Civil Procedure and Evidence, bar their production here.  Respondent respectfully requests the Court deny Plaintiff's motion in its entirety and enter a Protective Order barring the discovery of the evidence sought in Plaintiff's subpoena.

## FACTUAL BACKGROUND

In the motion, counsel for Dean Eramo makes numerous untrue, unfair, and inflammatory statements regarding Respondent.  Respondent rejects Plaintiff's characterizations of the facts of this matter and sets forth below the facts that are relevant for the instant motion and Respondent's opposition.

### A.  Plaintiff's Claims

On May 12, 2015, Plaintiff Nicole Eramo, the associate dean of students at the University of Virginia, filed a lawsuit against Rolling Stone LLC, a Rolling Stone Reporter named Sabrina Rubin Erdely, and Wenner Media LLC.  Dean Eramo alleged that the Defendants made defamatory statements concerning her in an article published in Rolling Stone discussing the problem of rape on college campuses, with a particular focus on UVA.  *See generally* Pl. Mem. at 33-38.[1]  Dean Eramo alleges, essentially, that Defendants defamed her in the article by

---

[1] In support of the necessary factual contentions, Respondent cites largely to the sworn allegations contained in Plaintiff's own complaint, which as binding admissions cannot be contested by Plaintiff here.  Plaintiff's memorandum in support of the motion and its exhibits are

characterizing her as not sufficiently supportive of victims of sexual assault.  *See generally* Pl.

Mem. at 34-35.

The article included statements attributed to "Jackie" – Respondent here – a pseudonym

for a UVA undergraduate student and victim of sexual assault.  ***But Dean Eramo's claims do***

***not even purport to include any defamatory statements by "Jackie."***  Nor could they, because

the statements attributed to Respondent in the article were supportive of Dean Eramo.   As

Rolling Stone states in its sworn Answer:  "the Article states that Plaintiff put 'Jackie' in touch

with Emily Renda and the sexual assault survivors group One Less; that Dean Eramo is 'beloved

by survivors, who consider her a friend and confidante'; that survivors 'laud [her] as their best

advocate and den mother'; that Jackie called her 'an asset to the community; and that 'students

praise' UVA's deans that deal with sexual assault like Dean Eramo 'as caring folks who answer

late-night calls from victims and even make emergency-room visits,' among other positive

descriptions."  Ex. A, Rolling Stone Answer ¶ 175.  *See also id.* ¶¶ 4, 179, 181.

### B.  Plaintiff's Third Party Subpoena

Notwithstanding that Respondent is not a party to this case, nor can comments attributed

to her be relevant to Plaintiff's claims (as the only such comments cited in the Rolling Stone

article were positive), Plaintiff served a subpoena demanding wide-ranging discovery from

Respondent as if she were a party, including (but not limited to) unbounded requests for all

communications, from January 1, 2012 through the present between Respondent and a sexual

assault counselor (Request 7), a sexual assault support group (Request 11), and any friend or

family member relating in any way to the article (Request 16) or ***any person*** being the victim of

---

included in the same single PDF.  Respondent's citations to "Pl. Mem." are to the PDF page,
rather than the page number of the particular document cited.

sexual assault (Request 14).  *See Pl. Mem. at* 10.  Taken together, Dean Eramo's requests call for Respondent's own private counseling communications, medical communications, conversations with other survivors about their own assaults, and conversations with any person about anything discussed in the article.

In response, counsel for Respondent served detailed objections, raising numerous independent grounds under Federal and state law barring the production sought.  *See* Ex. B, Objections and Responses to Third Party Subpoena.  These objections are fully set forth in the attached exhibit, but Respondent notes that Respondent's objections included, but were not limited to, the following:  the undue burden to her (especially in her status as a third party), the protections afforded to her privacy and dignity as a victim of sexual assault, privileges that apply to her counseling communications including communications with her former counselor Dean Eramo, Plaintiff's failure to establish any relevance of the evidence to the asserted claims, and the patent lack of necessity or urgency to secure such production from a third party at this juncture in light of other avenues available to Plaintiff.

Plaintiff responded with a letter that ignored the aforementioned objections, and misstated both the law protecting sex assault victims and the facts of the case.  *See generally* Pl. Mem. at 27-33.  In addition, Plaintiff's letter and the subsequent meet and confer teleconferences with counsel made clear that Plaintiff continued to demand any communication, since January 2012, with any person about any topic referenced in the article, including but not limited to Respondent's sexual assault. Based on the current scheduling order, discovery in Plaintiff's case does not conclude until March 30, 2015.  Ex. C, Scheduling Order, p. 1.

## ARGUMENT

## I.   THE COURT SHOULD TRANSFER THE MOTION TO THE COURT WHERE THE UNDERLYING CASE IS PENDING.

As set forth fully in Respondent's Motion to Transfer [Dkt. 6], this Court need not – and should not – address the merits of Plaintiff's motion.   Rule 45(f) provides for transfer upon consent of the responding party, let alone the affirmative request of the responding party, which has occurred here.   While there is no basis for Dean Eramo to contest transfer, she does exactly that.   *See* Dkt. 8.   The opposition misstates both the facts and the law, and consists largely of baseless claims that the requested transfer is a delay tactic.   Plaintiff's opposition is, in fact, strong evidence in favor of transferring the adjudication of this dispute to the presiding judge.

First, Plaintiff claims that Respondent "never indicated a preference for the Western District until she filed the instant Motion a full week after Plaintiff filed the Motion to Compel." Dkt. 8, p. 7.   This is manifestly untrue.   Plaintiff served the motion to compel after 5pm on the evening of Friday, November 13.   On the following Tuesday, counsel for Respondent emphasized that this motion should properly be heard by the presiding judge in Charlottesville, and requested Plaintiff's counsel withdraw the pending motion.   Counsel for Dean Eramo flatly refused to do so, without explanation.

Plaintiff also repeatedly claims that Rule 45(f) requires the serving party's request as a prerequisite to transfer, but at no point cites the text of the Rule for that assertion – because no such requirement exists.   The Rule simply states "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."

Plaintiff's argument is that a respondent requesting transfer is unusual.   What is actually unusual is a party attempting to avoid adjudication of a third-party subpoena by her own presiding judge, over the consent of the responding party.   Dean Eramo provides no explanation for why she is so steadfastly fighting the common sense notion that the court where the action is pending should rule on sensitive discovery issues, in light of that court's knowledge of the case

and own recently established procedure regarding third-party discovery, to say nothing of the conservation of judicial resources, avoiding risk of inconsistent rulings, and the myriad other prudential concerns that counsel for transfer.  Respondent requests that the Court issue an order transferring this matter to the presiding judge without reaching the merits of Plaintiff's motion.

## II.     THE COURT SHOULD DENY DEAN ERAMO'S MOTION ON ITS MERITS, AS IT VIOLATES LEGAL PROTECTIONS FOR SEXUAL ASSAULT VICTIMS AND APPLICABLE RULES OF DISCOVERY.

Even if this Court declines to transfer the motion, and decides to rule on its merits, the motion should be denied in its entirety, and the Court should enter a protective order shielding Respondent from Dean Eramo's unlawful and unduly burdensome discovery.

### A. The Substantial Privacy Rights Afforded to Sex Assault Victims by Federal Rule of Evidence 412 Prohibit The Discovery Dean Eramo Seeks.

Dean Eramo's requests seek any and all communications Respondent has ever had with any person regarding the sex assault she suffered.  Federal Rule of Evidence 412 prohibits exactly this type of unnecessary and intrusive inquiry into the lives of sex assault victims that are contrary to their dignity and privacy rights codified in Federal law. The federal crime victims' rights act states:  "A crime victim has the following rights: … (8) The right to be treated with fairness and with respect for the victim's dignity and privacy...."  18 U.S.C.A. § 3771 (West).  This overarching concern for the dignity and privacy of sex assault victims is most specifically vindicated by Federal Rule of Evidence 412, which states in pertinent part:  "The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition."  Fed. R. Evid. 412.  The only exception to this prohibition in civil cases is if the proffering party can overcome a reverse Federal Rule of

Evidence 403 analysis, namely that the "probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Fed. R. Evid. 412.

As a threshold matter, the law is clear that Rule 412 applies to civil cases and to non-party victims. This court has previously recognized that the Rule applies "in any civil case in which a person claims to be the victim of sexual misconduct. . . ." *Sheffield v. Hilltop Sand & Gravel Co.*, 895 F. Supp. 105, 109 (E.D. Va. 1995) (*citing* Adv. Comte. Notes to Rule 412). Other courts have held likewise. *See, e.g., Wolak v. Spucci*, 217 F.3d 157, 160 (2d Cir. 2000); *E.E.O.C. v. Donohue*, 746 F. Supp. 2d 662, 664 (W.D. Pa. 2010).

The protections of Rule 412 extend beyond the introduction of evidence at trial, to control the conduct of discovery. The Advisory Committee notes make clear that the protections of Rule 412 are given effect through Rule 26. "In order not to undermine the rationale of Rule 412, however, courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality." In fact, Rule 412's protections apply with such force that there is a presumption against discovery of material governed by the rule. The Advisory Committee again explains: "Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery." Courts have followed this guidance and issued protective orders prohibiting discovery the introduction of which would violate Rule 412. *See e.g. Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab.*, 171 F.R.D. 179, 182 (D. Md. 1997) (holding Rule 412 is applicable to resolving discovery disputes); *Macklin v. Mendenhall*, 257 F.R.D. 596, 604 (E.D. Cal. 2009)(holding it appropriate to limit the scope of discovery pursuant to the protections of Rule 412); *E.E.O.C. v. Donohue*, 746 F. Supp.

2d 662, 664 (W.D. Pa. 2010); *Priest v. Rotary*, 98 F.R.D. 755, 762 (N.D. Cal. 1983).[2]  It is

beyond argument that Rule 412 applies during discovery.

Thus, Dean Eramo bears the burden of demonstrating that the probative value of the

discovery sought "substantially outweighs the danger of harm to any victim and of unfair

prejudice to any party." F.R.E. 412.  She cannot meet either component of this burden.

### 1.   The discovery Dean Eramo seeks has no probative value for her claims

Plaintiff offers the following flawed theory of relevancy:  any statement made at any time

by ***Respondent*** to any person, even private or confidential statements, is somehow probative of

whether the ***Defendants*** acted recklessly or with actual malice towards Plaintiff.  Pl. Mem. at 15.

This theory is fatally flawed as a matter of logic and fact.

As an initial matter, it bears emphasis what Dean Eramo is ***not*** arguing.  Dean Eramo

does not claim that any statement in the Rolling Stone article (or elsewhere) attributed to

Respondent constitutes a defamatory statement about Dean Eramo herself.  Nor could she do so,

because it is beyond argument and conceded both in Plaintiff's complaint, in Defendants'

Answer, and in additional publicly available documents, that statements attributed to Respondent

have been supportive of Dean Eramo.   Thus, the notion that somehow Respondent made

defamatory statements to Defendants, which Rolling Stone then adopted and communicated in

its article, simply is not at work in this case.

Instead, Dean Eramo has a far more attenuated claim for the relevance of the discovery

she seeks from Respondent.  Dean Eramo asserts in her complaint that Rolling Stone acted either

with actual malice or recklessly in publishing the story reflected in the article, based on the

---

[2] Plaintiff persists in arguing that Rule 412 does not apply to discovery disputes (Pl. Mem at 18-19), despite Respondent having demonstrated otherwise in correspondence with Plaintiff's counsel prior to the filing of this motion.

information of which it was aware.  Pl. Mem. at 36-37.  But this assertion falls well short of establishing that the discovery she seeks would yield probative evidence.  Rolling Stone apparently does not contest that it should have acted differently, and that its failures are not Respondent's fault. Respondent's private communications simply are not probative of Rolling Stone's mental state.

Furthermore, even if these unrelated communications could be relevant in theory, Plaintiffs allegations foreclose any such relevance as pled.  By Dean Eramo's allegation, "regardless of the facts, Erdely had already planned to write an article stating that whatever school she settled on was indifferent to the problem of rape on campus."  Pl. Mem. at 70.  Putting aside whether such a statement is accurate, it is contained in Plaintiff's own complaint and she should be held to it.  Thus, even looking past the logical fallacy that information not in Defendants' possession could be probative of Defendants' mental state, the evidence sought here cannot be probative under Plaintiff's own stated theory.  The Supreme Court has long held that the Plaintiff is the master of her complaint, and is bound by the consequences of the allegations as pled.  *See e.g. Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350, 185 L. Ed. 2d 439 (2013).

**2. The significant harm Respondent will face by complying with the subpoena far outweighs the probative value of the Subpoena itself.**

Dean Eramo should be well aware of the emotional toll this ordeal has already taken on Respondent.  To require Respondent to revisit every communications she has ever had with another person regarding her sexual assault would only serve to re-victimize her.  Inexplicably, Plaintiff not only ignores any such prejudice to Respondent in connection with her expansive requests, but claims that "'Jackie's" Subpoena Response fails to offer any explanation as to why

responding to Dean Eramo's subpoena would be unduly burdensome." Pl. Mem. at 15[3]. This is as offensive as it is untrue. It is self-evident to any fair-minded person why being forced to disclose more than three years' worth of private communications regarding one's own sex assault and its aftermath would constitute a severe emotional burden to any victim. In point of fact, in her objections Respondent reiterated ***seventeen separate times*** that "the irrelevant evidence sought constitutes intimate, personal communications the disclosure of which would violate 'Jackie's' privacy and dignity (as well as the privacy and dignity of others) and subject 'Jackie' to extreme harm." *See generally* Pl. Mem. at 110-25.

Equally unavailing is Dean Eramo's repeated claim that, by discussing her story at all in the past, Respondent has forgone any privacy interest she has in connection with her assault. Pl. Mem. at 17. This argument, which is premised on misstatements of the facts even as pled by Dean Eramo, is unfair on its face and should be rejected.

In the first place, Plaintiff's sworn complaint states that Rolling Stone approached Respondent, not the other way around. Pl. Mem. at 70. The complaint further emphasizes that Defendant Erdely was put in touch with Respondent by Emily Renda, a University employee and counselor, who believed Respondent might be willing to discuss her story in an effort to help other survivors of sexual assault. *Id*. Furthermore, as Dean Eramo is well aware, the story was published using a pseudonym. Any claim that the article somehow amounts to Respondent consenting to anyone, including Dean Eramo, revealing her identity or other information is without merit.

---

[3] Plaintiff relies upon *Amick v. Ohio Power Co.*, No. 2:13-CV-06593, 2013 WL 6670238, at *1 (S.D.W. Va. Dec. 18, 2013), which collects cases standing for the principle that a responding party must demonstrate how a request is vague, overbroad, or burdensome. Respondent has repeatedly done so in communications with counsel, addressing the volume of irrelevant and

Furthermore, Rule 412 exists precisely to protect the dignity and privacy interests of sexual assault victims *that have come forward to discuss their experience*.  It is absurd to suggest every victim who chooses to share the fact of a sexual assault forgoes any privacy or confidentiality going forward.  Society is so rightly concerned with protecting victims of sexual assault that many news agencies refuse to identify victims even in news reports expressly covering the victim's testimony. Dean Eramo must know this, and she would be an ironic and lone voice in the sex assault survivor support community to be making such an argument.

The corresponding harm not only to Respondent, but also to others implicated by these requests, is likewise beyond dispute.  Dean Eramo seeks all communications, for example, between Respondent and individual friends who are themselves sex assault survivors, as well as all communications with the group One Less, which Plaintiff's own complaint acknowledges is a campus support group for sexual assault survivors.[4]  Plaintiff's requests would therefore require Respondent to disclose her conversations with other sexual assault victims regarding their shared experiences, a result that would only amplify the unnecessary harm to the dignity and privacy of victims Rule 412 was instituted to prevent.  The balancing test included in Rule 412 expressly anticipates preventing this outcome, addressing "danger of harm *to any victim* and of unfair prejudice *to any party*." (emphasis added).  Plaintiff cannot overcome the presumption against admission that governs the discovery it seeks and Rule 412 mandates denying Plaintiff's motion as to any evidence in its entirety.

On facts very similar to these, another court in this circuit has already acknowledged the proper application of Rule 412.  In *Doe v. Salisbury Univ.*, No. CIV. JKB-15-517, 2015 WL 5005811 (D. Md. Aug. 21, 2015), two male students, having been expelled following an

---

sensitive evidence sought by Dean Eramo's subpoena and the corresponding harm to the privacy and dignity of Respondent and others that compliance would cause.

allegation of sex assault, sued the school and the victim for, among other things, defamation. The plaintiffs claimed that the school's decision to expel them was flawed for numerous reasons, one of which being that it gave weight to the testimony of the victim. *Id.* During motion to dismiss briefing, the plaintiffs indicated an intent to introduce evidence covered by 412. While not necessary for the holding at the motion to dismiss stage, the Court went out of its way in a footnote to emphasize the applicability of Rule 412 and stated "while the Court does not yet issue a ruling on these evidentiary issues, the Court is dubious that many of these allegations about Defendant Jane Doe # 1 will be deemed admissible under the protections of Rule 412." *Id* at *19. For all the reasons discussed, this Court should reject Dean Eramo's unwarranted subpoena given the substantial harm Respondent would suffer.

### 3. Dean Eramo's arguments that Rule 412 does not apply to Respondent's sexual assault are without merit.

Dean Eramo incorrectly claims that because the sex assault Respondent suffered is allegedly relevant to this case, the sex assault is not "other sexual behavior" for purposes of triggering 412's protections. (Pl's Mem. at 17.) Plaintiff's argument is misguided for three independent reasons. ***First***, as explained *supra*, the "reverse" Rule 403 balancing test in Rule 412, which carries a presumption of exclusion, applies to evidence that would otherwise be relevant or admissible. The very function of Rule 412 is to require the proponent to demonstrate as a threshold matter that the probative value ***of the arguably relevant evidence*** substantially outweighs the harm to any victim. "In a civil case, otherwise admissible evidence may only be introduced [under Rule 412] if the proponent can show that its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." *Wolak v. Spucci*, 217 F.3d 157, 160 (2d Cir. 2000). Dean Eramo has not even attempted to do so here, and

---

[4] Plaintiff's motion, on the other hand, now describes One Less merely as "a campus group."

merely insisting that the evidence is relevant despite Rule 412 does not begin to satisfy this burden. There would be manifest harm to Respondent and other victims whose personal conversations Plaintiff seeks to examine. Plaintiff has not – and cannot – demonstrate that such harm is substantially outweighed by whatever tangential relevance she claims it would have on her discrete claims for defamation by unrelated parties.

*Second*, contrary to the assertion in her motion, Plaintiff's requests plainly contemplate evidence relating to intimate and private communications that go well beyond her assault. Plaintiff seeks the mandatory production of any communications between Respondent and any other person, to include family, friends, and acquaintances, which "reference in any way being the victim of an alleged sexual assault." Pl. Mem. at 10. Plaintiff 's assertions notwithstanding, these searching inquiries are not even limited to facts directly relating to the circumstances of the assault itself, and on their face seek any number of communications that relate to intimate matters that are protected by Rule 412.

*Lastly*, Plaintiff's argument is flatly contradicted by the Advisory Committee notes and common sense. The Advisory Committee notes contemplate the exclusion of evidence intrinsic to the assault when it is not relevant to the proffered claims: "The word 'other' is used to suggest *some flexibility* in admitting evidence 'intrinsic' to the alleged sexual misconduct." (emphasis added). Rather than adopt the bright line approach that evidence about the actual sexual assault the victim suffered itself is always relevant, Rule 412 allows merely for flexibility. At the same time, the notes also recognize that the ambit of Rule 412 should expand to address unanticipated applications. The notes open by recognizing "Rule 412 has been revised to diminish some of the confusion engendered by the original rule and *to expand the protection afforded alleged victims of sexual misconduct*." (emphasis added) This court has cited the notes for just this proposition, recognizing that "a balancing test must be employed in civil cases

because greater flexibility is needed to accommodate evolving causes of action . . ." *Sheffield v. Hilltop Sand & Gravel Co.*, 895 F. Supp. 105, 109 (E.D. Va. 1995) (citing Adv. Comte. Notes to Rule 412).

Construing Rule 412 in accordance with its broad protective purposes requires denial of Dean Eramo's motion, particularly here where Respondent is not a party to the case.  It would run totally counter to the public policy of protecting sex assault victims to allow a civil plaintiff raising unrelated claims to drag a non-party victim into litigation and subject her to extremely burdensome discovery.  Such a reading would turn Rule 412 on its head, as it would mean that the Rule provides *less protections* to victims as their assault became *less relevant* to the instant case.  Plaintiff cites no authority in support of her inappropriate reading of Rule 412, and the Court should reject such a deeply flawed interpretation of this important protection and enter a protective order prohibiting discovery.  If Rule 412 prevents anything, it is this.

**B. RESPONDENT'S CONFIDENTIAL COUNSELING COMMUNICATIONS ARE PROTECTED UNDER VIRGINIA LAW AND FEDERAL LAW.**

In her motion, Dean Eramo completely disregards the counselor relationship that existed between Dean Eramo and "Jackie" during the relevant periods.  Plaintiff does not and cannot now claim that such a relationship did not exist, or that disclosure is somehow valid, because she affirmed the existence of the relationship and its prohibition on disclosure in her own Complaint. In her sworn pleading, Dean Eramo admits she "met with and counseled Jackie . . ." Pl. Mem. at 34.  *See also id*. at 52 and 65.  Plaintiff also seeks "Jackie's" private communications with Emily Renda, another University employee with whom "Jackie" engaged in private counseling communications regarding her assault.  Dean Eramo's own sworn complaint concedes that, at the time she spoke with Jackie, Emily Renda was "herself was an employee of UVA working on sexual assault issues." Pl. Mem. at 70.

The Virginia Code recognizes the privileged nature of communications between sex assault victims and their counselors.  "In order to ensure the safety of" victims of sexual assault, Virginia limits the information that any individual providing services to victims of sexual assault may reveal.  Va. Stat. § 63.2-104.1(A).  Once an individual provides services to a victim, that individual "shall protect the confidentiality and privacy of persons receiving services." *Id.*  The Code provides that unless a specific exemption applies (none apply here), people providing services to victims of domestic violence must maintain the victim's confidentiality and protect her privacy.  Specifically, people providing services to sexual assault victims "shall not: 1. [d]isclose any personally identifying information or individual information collected in connection with services requested … or 2. [r]eveal individual client information without the informed, written, reasonably time-limited consent" of the victim.  *Id*. § 63.2-104.1(B)(1)-(2). At no time has Respondent consented to Dean Eramo's disclosure of any confidential communications."  Turning the law and common sense on its head, Dean Eramo now comes before the Court seeking to compel Respondent to produce such privileged communications, with Dean Eramo, Emily Renda, and others at UVA as well as any other counselor or professional to whom such privilege would apply.  Such requests are inappropriate and should be denied on this basis.

Furthermore, Dean Eramo admittedly seeks evidence protected from disclosure by the University under Family Educational Rights and Privacy Act (FERPA).  FERPA controls what disclosure policies Universities must have in place in order to receive federal funds, and includes provisions protecting educational records from disclosure.  *See generally* 20 U.S.C. § 1232g; 34 CFR Part 99 *et seq.*  As noted above, the presiding Court already has implemented a discovery procedure under FERPA for non-parties to register objections to the University of Virginia

regarding disclosure of protected information.. *See Main Case*, Dkt. 41.

Unable to deny that FERPA protects documents contemplated by the subpoena, Plaintiff's motion attempts to avoid the issue by claiming "FERPA applies only to subpoenas directed to an educational agency or institution, and has no bearing on a subpoena directed to an individual like Jackie." Pl. Mem. at 16.  First of all, Dean Eramo did not contest, either in her sworn complaint or elsewhere, that 1) Dean Eramo was and is aware that FERPA applies to documents reflecting her interactions with Respondent 2) that these protections apply outside the context of a subpoena being received by UVA and 3) Respondent has not waived any such protection, a prerequisite to disclosure.

Furthermore, this new position makes no sense.  Plaintiff wants the Court to conclude that, while FERPA limits UVA's (and even Dean Eramo's) disclosure to third parties of "Jackie's" communications with Dean Eramo under the responsibilities attendant upon educational institutions under FERPA, Dean Eramo, an employee at the very same institution, is free to subpoena the exact same communications *from Jackie herself*.  This cannot be and is not the law, and Plaintiff cites no authority to the contrary.[5]  Regardless, Respondent has never, and does not, waive the full protections under FERPA to which she is entitled.  The presiding court is addressing the propriety of producing any such records, allowing for the objection and request for a protective order from the responding student, and this Court should reject Plaintiff's effort to thwart that process.

Federal Rule of Civil Procedure 26 allows only for the discovery of non-privileged information, and Federal Rule of Evidence 501 provides that "state law governs privilege

---

[5] Plaintiff's vague and passing reference to entire Code of Federal Regulations section implementing FERPA ("*See generally* 34 CFR Part 99), presumably *et seq.*, is unavailing and offers no support for the specific interpretation offered her.

regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.  Plaintiff cannot demand production of documents from "Jackie" in violation of applicable privacy protections, including Va. Stat. § 63.2-104.1(A).  Requests 6, 7, and 12 should be denied for this additional reason.

### C. Rule 26 and Rule 45 Prohibit the Irrelevant and Burdensome Discovery Sought Here from Non-Party Respondent

Even putting aside the foregoing sex assault victim confidentiality protections which foreclose Dean Eramo's motion, her subpoena fails under Federal Rules of Civil Procedure 26 and Rule 45, which protect non-parties, like Respondent, from the irrelevant and unduly burdensome discovery demands Dean Eramo seeks to impose.

Rule 26 states that courts "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:  (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C).[6]

Rule 45 places demands that parties seeking discovery "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P.

---

[6] On December 1, 2015, an amendment to Rule 26 becomes effective.  The protections cited here from Rule 26(b)(2)(C) are now incorporated into the definition of discoverable information contained in the new Rule 26(b)(1), which reads:  "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Case 1:15-mc-00035-GBL-IDD   Document 9   Filed 11/27/15   Page 21 of 30 PageID# 187

45. Rule 45 provides additional protections to third parties, mandating that court's adjudicating an attempt to enforce production from a third party "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45. Rule 26 affords similar protections, stating "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:  (A) forbidding the disclosure or discovery . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; . . ." Fed. R. Civ. P. 26.

"Non-party status is one of the factors the court uses in weighing the burden of imposing discovery.  An undue burden is identified by looking at factors such as relevance, the need for the documents, the breadth of the document request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed." *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 452-53 (D.D.C. 2002).  Courts routinely invoke these protections in prohibiting and limiting discovery from third parties of the type sought here.  *See e.g. Cook v. Howard*, 484 *F. App'x* 805, 813 (4th Cir. 2012) ("As detailed above, the Appellants' request for production of documents sought an inordinate array of documents from a non-party in comparison to a limited number that may have been responsive and relevant to the remaining claims."); *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005)("In the context of evaluating subpoenas issued to third parties, a court will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.")(internal citations and punctuation omitted); *Myers v. AT&T, Inc.*, No. 5:12-CV-00714-BO, 2015 WL 4566940, at *3 (E.D.N.C. July 28, 2015)("In the context of evaluating subpoenas issued to third parties, a court will give extra consideration to the objections of a non-

party, non-fact witness in weighing burdensomeness versus relevance.")(internal citations omitted).

As explained below, Respondent is entitled to relief from Dean Eramo's subpoena in light of these foregoing factors.  The irrelevance of the evidence sought, and the harm Respondent will suffer through forced compliance, were addressed *supra* at Sections II.A.1-2. The other factors under Rules 26 and 45 also require the Court to deny Dean Eramo's motion

1. **The breadth, period covered, and lack of particularity of Dean Eramo's requests constitute an undue burden on respondent**

The facial overbreadth and intrusiveness of Plaintiff's requests – in terms of scope, time and topic – is serious and undeniable.  Requests 3-5 and 8-11 seek all of Respondent's private communications with various friends about the assault since 2012.  Requests 17 and 19 seek all social media, text, or other digital messages relating to Respondent's assault (17) or any other "of the foregoing topics" (19), which include "[a]ll communications between you and any other person in which you reference in any way being the victim of an alleged sexual assault on the UVA campus" (Request 14) and "[a]ll communications between you and any other person relating to the Article." (Request 16).

In *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237 (E.D. Va. 2012), this Court rejected discovery requests much narrower than those propounded here.  In *Singletary*, a breach of contract action brought by a trucking employee against his employer, the defendant trucking company served a subpoena demanding production of the plaintiff's entire employment file from a previous employer.  The Court first reiterated its standard obligation to "limit the frequency or extent of discovery if the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving

the issues." *Id.* at 241.   The Court then found the subpoenas for plaintiff's entire employment file to be overbroad on their face, as a matter of law.   "Such subpoenas could lead to the production of medical information, social security numbers, payroll information, income tax information, information about family members, and other documents completely extraneous to this litigation, and the Court finds it difficult to conceive of subpoenas which could be more expansively written than these." *Id.*

Also instructive is this Court's holding and analysis in *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606 (E.D. Va. 2008) (Lee, J.).   There, a party in litigation pending in Mississippi sought to enforce a subpoena against a third-party witness that sought all emails for a six-week period.   *Id.*   The court found persuasive a holding from the Court of Appeals for the Ninth Circuit, which had held that a subpoena seeking hundreds of emails "many of which were unrelated to the litigation, privileged or personal . . . was massively overbroad, patently unlawful, and violated the Federal Rules" and thus the magistrate judge quashed the subpoena.   *Id.* at 612 (citing *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004)).   The *AOL* court held that the subpoena requesting all emails from a third-party for a six-week period was equally violative of the Rules, and quashed the subpoena.   "State Farm's subpoena remains overbroad because the e-mails produced over a six-week period would likely include privileged and personal information unrelated to the *McIntosh* litigation, imposing an undue burden on Cori Rigsby." *Id.*

Dean Eramo's subpoena here is defective in precisely the same respects, and in fact far exceeds the improper discovery rejected in *Singletary* and *In re Subpoena Duces Tecum*.   By Dean Eramo's own description, she has subpoenaed 1) all text messages, emails, or other communications, 2) between Respondent and any other person, 3) for the ***almost four years*** between January 2012 and the present, that relate 4) in any way to ***any person*** being a sexual

assault victim, *or* 5) in any way to the Article, including any matter raised in the article or any discussion of it.  *See generally* Pl. Mem. at 29-30.  It cannot be denied that such requests "would likely include privileged and personal information unrelated to the [Eramo] litigation," and thus the court's holding in *AOL* applies here and mandates denial of Plaintiff's motion.  As the court noted in a different case:  "A request for all documents 'relating to' a subject is usually subject to criticism as overbroad since life, like law, is a 'seamless web,' and all documents 'relate' to others in some remote fashion.  Such a request unfairly places the onus of non-production on the recipient of the request and not where it belongs—upon the person who drafted such a sloppy request."  *James Madison Project v. C.I.A.*, No. 1:08CV1323GBL, 2009 WL 2777961, at *4 (E.D. Va. Aug. 31, 2009)(Lee, J.)(internal citations and punctuation omitted).

### 2. Any Arguably Relevant Evidence Should Be Obtained, If At All, From the Parties to This Case

For some inexplicable reason, Plaintiff attempts to enforce an overbroad and intrusive subpoena on a former victim, whom she counseled, who is not a party to this case prior even to receiving the production of documents from the actual parties, let alone moving to compel any remaining production from them.  This tactic is inappropriate, unnecessary, and constitutes an additional undue burden.  Again, Rule 26 mandates the Court assess undue burden "considering the needs of the case", including "prior discovery in the case . . .".  Here, discovery of documents in the possession of the actual parties has been served and apparently remains substantially outstanding.   There is no need, prior to any review of party discovery and with more than four months before discovery is scheduled to close, for Plaintiff to seek such burdensome and intrusive production from a third party.  There is simply no reason why, as repeatedly proposed by Respondent, Plaintiff cannot wait until the parties have completed production, including having all objections adjudicated by the court where the matter is pending, to determine whether

the parties production, or a substantive ruling denying such discovery, obviates the need for any burdensome request from Respondent.

In fact, it may be that Plaintiff seeks to compel production from a non-party at this stage because it anticipates, or is encountering, substantial difficulty in obtaining these documents from the actual parties in light of substantive barriers to discovery that have been raised by Defendants and others.   Although not aware of Plaintiff's correspondence with other parties, Respondent understands that Defendants may be raising serious objections under the First Amendment and other journalistic privileges against production of their communications with confidential sources, including Respondent.   It is worth noting that Virginia recognizes a newsgathering privilege.   "Under Virginia law, reporters have a qualified privilege against disclosure of confidential sources in public figure defamation cases." *Hatfill v. New York Times Co.*, 242 F.R.D. 353, 356 (E.D. Va. 2006).   Dean Eramo's efforts to obtain discovery from Respondent at this juncture is at best premature and at worst at odds with the determination of related and complex discovery issues in this case, including the adjudication of various privileges and constitutional issues that would also apply here.   Respondent is not aware of any other motion to compel filed in the main case, and thus understands that these issues have not yet been addressed by the presiding court. This further supports Respondent's position that the presiding court should resolve the propriety of Plaintiff's subpoena as well.

In *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449 (D.D.C. 2002), the court quashed equally burdensome requests for reasons raised by Respondent.   "In short, the documents are irrelevant to the plaintiff's claim. In addition, the discovery sought is obtainable from another source that is more convenient, less burdensome, and less expensive. Fed. R. Civ. P. 26(b)(2). Moreover, the discovery is unduly burdensome considering the non-party status of the

witnesses." *Id.* at 454.  Exactly these factors counsel in favor of denying Plaintiff's motion here.

A recent case from another court within the Fourth Circuit offers an instructive summary of the approach the Court should take here with respect to the undue burdens posed by this subpoena.  In *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, No. 1:12CV27, 2014 WL 6686727 (M.D.N.C. Nov. 26, 2014), giving "extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance. . . ." the court quashed a third-party motion to compel on grounds of burden and overbreadth.  "[A] subpoena duces tecum is intended to require the production of designated documents; it is not designed to put the person subpoenaed to the expense of compiling information from his or her records or analyzing their content."  *Id.* at *5 (internal citation omitted).  In doing so, the Court expressly refused to modify the subpoena from the enforcement that had been requested and the court should do the same here:  "Plaintiffs' instant filing neither requests modification of the Subpoena as an alternative to quashing it outright, nor proposes any guideline for how the Court might enforce the Subpoena in a more limited form. (*See* Docket Entry 108 at 1–12.)  Under these circumstances, the Court will quash the Subpoena rather than engage in conjecture concerning which information Plaintiffs consider most pertinent."  *Id.*

The court should reach the same result here.  Plaintiff served an overbroad and vague subpoena on a third-party victim, explicitly seeking (among other things) any and all communications, with any person, about sensitive personal matters.  Plaintiff made no effort to exclude communications with doctors, counselors, or other sensitive, privileged discussions.  While Plaintiff now attempts to imply a willingness to narrow the requests in theory, she has done no such thing and here requests the Court to compel production in response to each and every subpoena request, as drafted and served.  In the alternative, Plaintiff presents her facially

defective requests to the Court, in an apparent hope that the Court will attempt to repair them in service of her motion to compel.  Yet Plaintiff does not offer the Court a sensible basis by which to narrow the subpoena, should the Court be inclined even to consider doing so.  Furthermore, it is not up to third parties, or the Court, to rewrite overly broad and unduly burdensome discovery requests on behalf of the party propounding them.  The same factors present in *Champion* apply here and warrant a complete denial of Dean Eramo's motion.

### 3.  Even If Discovery Were Arguably Relevant, It's Probative Value to the Disputed Issues in this Case is Negligible at Best

Another independently sufficient basis to find undue burden under Rule 26 is if the burden imposed on a third party outweighs "the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26.    Even if the evidence sought were relevant, which it is not, the probative value to any material issue in this case is negligible.

Dean Eramo's claims are apparently based on statements expressing opinions, inferences, and argumentative conclusions made by Defendants **in spite of** statements attributed to Respondent.  As already discussed *supra*, no statements attributed to Respondent can in any way be characterized as defamatory.  Even the comments from others in the article Dean Eramo does allege to be defamatory are not statements of provable facts, but statements of opinion.  Dean Eramo's entire theory is that Defendant Erdely included her own editorializing about the issues presented in the article, as part of a premeditated effort to create "an article that fulfilled her preconceived narrative about the victimization of women on American college campuses. . ."  Pl. Mem. at 36.    However, under Virginia law, such conclusory opinions cannot constitute defamation.    Under Virginia law, "speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action.  Statements that are relative in

nature and depend largely upon the speaker's viewpoint are expressions of opinion." *Jordan v. Kollman*, 269 Va. 569, 576, 612 S.E.2d 203, 206 (2005) (internal citation omitted).  Any alleged relevance of the communications sought by Dean Eramo here cannot justify the burden under Rule 26.

## CONCLUSION

If this Court does not transfer Plaintiff's motion to the presiding Court, then, for the reasons stated herein, Respondent respectfully requests the court deny plaintiff's motion in its entirety and further requests that the Court enter a protective order prohibiting discovery in response to all requests contained in Plaintiffs subpoena.

Dated: November 27, 2015                                     Respectfully submitted,

                                                              */s/ Billy B. Ruhling*
                                                              Billy B. Ruhling, II (VA Bar No. 45822)
                                                              DIMURO GINSBERG, PC
                                                              1101 King Street, Suite 610
                                                              Alexandria, Virginia 22314
                                                              Tel: 703-684-4333
                                                              Email: bruhling@dimuro.com

                                                              Palma E. Pustilnik (VA Bar No. 73337)
                                                              CENTRAL VIRGINIA LEGAL AID
                                                              SOCIETY
                                                              1000 Preston Avenue, Suite B
                                                              Charlottesville, VA  22903
                                                              Tel: (434) 327-1443
                                                              Email: palma@cvlas.org

                                                              Rebecca R. Anzidei (VA Bar No. 46346)
                                                              Philip J. O'Beirne (VA Bar No. 71956)
                                                              STEIN MITCHELL CIPOLLONE BEATO
                                                                 & MISSNER LLP
                                                              1100 Connecticut Ave., N.W., Ste. 1100
                                                              Washington, D.C. 20036

Tel: 202-737-7777
Email: ranzidei@steinmitchell.com
*COUNSEL FOR RESPONDENT*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Respondent's Response in Opposition to

Plaintiff's Motion to Compel was served on the below counsel on November 27, 2015, via ECF

and email.


Thomas A. Clare (VA Bar No. 39299)
Elizabeth M. Locke (VA Bar No. 71784)
CLARE LOCKE LLP
902 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
*COUNSEL FOR PLAINTIFF NICOLE ERAMO*


                                        */s/ Billy B. Ruhling*
                                        Billy B. Ruhling, II (VA Bar No. 45822)