IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NICOLE P. ERAMO ) | |
| ) | |
| Plaintiff ) | Case No. 1:15-mc-00035-GBL-IDD |
| ) | |
| v. ) | |
| ) | Underlying litigation: |
| ROLLING STONE LLC, ) | *Eramo v. Rolling Stone, LLC, et al.*, |
| SABRINA RUBIN ERDERLY, and ) | Case No. 3:15-cv-00023-GEC, in the |
| WENNER MEDIA LLC, ) | United States District Court for the |
| ) | Western District of Virginia |
| Defendants. ) | |

**NICOLE ERAMO'S REPLY BRIEF IN SUPPORT OF HER MOTION TO COMPEL
NONPARTY RESPONDENT "JACKIE" TO COMPLY WITH RULE 45 SUBPOENA**

## INTRODUCTION

Nonparty Respondent "Jackie's" November 27, 2015 Response in Opposition to Plaintiff's Motion to Compel Production [Dkt. 9] ("Opposition" or "Opp'n") does not address, in any meaningfully way, Plaintiff Nicole Eramo's detailed explanation as to why the documents sought in the subpoena are highly relevant to Plaintiff's defamation action against *Rolling Stone* magazine, and fails to offer any valid justification for "Jackie's" across-the-board refusal to comply with Dean Eramo's subpoena.  Nowhere in Jackie's Opposition does she in any way attempt to rebut three key facts: (1) Jackie voluntarily chose to share a detailed (and false) account of an alleged gang-rape at the Phi Kappa Psi fraternity, and her subsequent interactions with Dean Eramo, with a prominent national magazine, with specific knowledge and intent that her story would published and widely read by the public; (2) *Rolling Stone* magazine published Jackie's story as the centerpiece of its article, further dramatizing Jackie's false account of the gang rape and accusing Dean Eramo of seeking to suppress it in order to protect UVA's reputation; and (3) subsequent investigations by the Charlottesville Police Department, the Columbia Journalism Review, innumerable other media outlets, and *Rolling Stone* itself determined that the story Jackie told *Rolling Stone* was a lie.  Jackie's claim that she is now somehow completely immune from participating in any discovery with regard to her own false story that precipitated the defamatory article does not comport with common sense, let alone the Federal Rules of Civil Procedure.

*First*, as explained at great length in Plaintiff's Memorandum, the documents sought from Jackie are highly relevant to the defamation action.  They will demonstrate (1) that Jackie's account of an alleged gang rape at Phi Kappa Psi fraternity on September 28, 2012, the focal point and centerpiece of the *Rolling Stone* article, was false; (2) that the article's depiction of

Dean Eramo's actions, response, and assistance to Jackie was false; (3) that Jackie did not tell Dean Eramo the fictional account of a violent gang rape that she told *Rolling Stone*; (4) that Dean Eramo was thus falsely accused of trying to conceal a gang rape that did not occur; and (5) that Jackie, *Rolling Stone's* primary source for the gang rape story **and** its defamatory claims about Dean Eramo, is a serial fabulist who *Rolling Stone* knew or should have known was not a reliable source on which to base its defamatory statements.

***Second***, Jackie's heavy reliance on Federal Rule of Evidence 412 as her basis for refusing to produce documents is misplaced. Rule 412 simply has no applicability to the documents sought from Jackie, for four reasons. First, this is a defamation case against a magazine — not a case involving "sexual misconduct" within the meaning of Rule 412. Rule 412's Advisory Notes make clear it is not applicable under these circumstances. Second, it is beyond reasonable dispute that the fictional account of gang rape at Phi Kappa Psi told by Jackie and published by *Rolling Stone* simply did not occur. Third, no person's sexual "predisposition" is at issue. And, finally, the subpoena is concerned solely with the one incident that is relevant to the litigation — Jackie's invented tale of a supposed fraternity gang rape on September 28, 2012 — and not with any ***other*** extrinsic sexual activities that would trigger Rule 412.

***Finally***, Jackie's arguments regarding the timing of the subpoena and other supposed privileges are without merit. Jackie simply fails to identify any privilege — common-law or statutory — that prohibits the discovery sought here. She therefore fails to meet her burden of establishing a privilege. And Jackie's argument that the Motion to Compel precedes document discovery between the parties to the litigation is both factually inaccurate and legally irrelevant.

While it is certainly understandable that Jackie may prefer not to produce documents proving that she knowingly fabricated the bombshell story of a gang rape she told to *Rolling*

2

*Stone*, the bottom line is that Jackie — by her own conduct — has made herself a key witness in this defamation action. Jackie's willful and voluntary decision to tell a false story to a reporter for a national magazine has caused a great deal of harm to Dean Eramo and a great many other people, resulting in at least three (so far) defamation lawsuits. Jackie has no basis for refusing to comply with the validly issued subpoena and should be ordered to do so.

## ARGUMENT

**I. The Subpoena Seeks Only Highly Relevant Documents.**

Plaintiff's Memorandum explained in detail the relevance of each category of documents sought by the subpoena. (*See* Nov. 13, 2015 Nicole Eramo's Mem. of Law in Supp. of Mot. to Compel Nonparty Respondent Jackie's Compliance with Subpoena Duces Tecum ("Mem.") at 10-13 [Dkt. 2].) Jackie's Opposition does not directly address any of these arguments, but instead again insists that Jackie's communications are not relevant because Jackie herself has not been sued for defamation. (Opp'n at 8-9.) This argument misses the mark entirely. The entire defamatory article revolved around Jackie's tale of being violently gang raped as part of a fraternity hazing ritual. (*See* Mem., Ex. B ¶¶ 3-4 [Dkt. 2-2].) The author and *Rolling Stone* then claimed that, when Jackie reported her alleged gang rape to Dean Eramo, Dean Eramo abused Jackie and discouraged her from formally reporting the assault. (*Id*. ¶¶ 4, 54-71.) The author and *Rolling Stone* stated in the article and in subsequent media statements that Dean Eramo chose to do nothing about Jackie's allegations, and actively sought to suppress the story of Jackie's assault, in order to protect the reputation of the University. (*Id*. ¶¶ 77-80).

Contrary to the arguments in Jackie's Opposition, many of the defamatory statements in the article are attributed ***directly*** to Jackie — including *Rolling Stone's* false claim that Dean Eramo called UVA "the rape school." (*Id*. ¶¶ 61.) Indeed, this defamatory statement was highlighted with a large, bolded pull-quote in the article:

3



(*Id.*) Dean Eramo never said any such thing and cannot imagine why Jackie would tell a magazine reporter that she did.

Jackie's argument that she herself is not accused of defamation ignores the obvious fact that *Rolling Stone's* claims about Jackie's supposed gang rape and subsequent interactions with Dean Eramo **were based solely on Jackie**, the primary source for the article, and the only source that could have claimed percipient knowledge of the gang rape and Dean Eramo's interactions with Jackie. But the story that Jackie told *Rolling Stone* has since roundly been proven to be pure fabrication. *Rolling Stone* has publicly acknowledged "discrepancies" in Jackie's account, and claimed their trust in her was "misplaced."[1] The Charlottesville Police Department "exhausted all investigative leads" into Jackie's supposed sexual assault and determined that "there is no substantive basis to support the account alleged in the Rolling Stone article." (Mar. 23, 2015 Press Release, "Charlottesville Police Department's Investigation into an Alleged Sexual Assault as Depicted in Rolling Stone Magazine Article Dated November 19, 2014"

---

[1] *See* T. Rees Shapiro, *Rolling Stone backtracks on U. Va. fraternity rape article as key elements doubted*, Chicago Tribune (Dec. 1, 2015), available at http://www.chicagotribune.com/news/nationworld/chi-rolling-stone-uva-rape-20141205-story.html.

(Attached as Ex. A).) The fact that the fraternity gang rape at the center of the article ***did not occur as Jackie recounted it*** is plainly relevant to whether the article was false and whether *Rolling Stone's* claim that Dean Eramo tried to cover up a (non-existent) gang rape was false and defamatory. Jackie cannot dispute this fact, so her Opposition simply ignores it.

Jackie's Opposition also ignores the fact that *Rolling Stone* is expected to argue that it is not legally at fault because it printed exactly what Jackie told the magazine and believed her tale to be true at the time of publication. When a magazine or newspaper relies on a source in printing a story that is alleged to be defamatory, whether the magazine had reason to doubt the reliability of the source is a key issue, as is whether the magazine purposefully avoided other sources that would have cast doubt on the chief source's credibility. *See, e.g., Wells v. Liddy*, 37 Fed. App'x 53, 61 (4th Cir. 2002) ("A reasonably jury could conclude further that sole reliance on such an unreliable source violates Virginia's [defamation] negligence standard...").

Thus, whether the supposed gang rape at Phi Kappa Psi occurred at all, whether Jackie fabricated and/or exaggerated some or all of her account of it to *Rolling Stone,* and whether Jackie was a credible source for *Rolling Stone* to rely on are all important issues in the underlying defamation action. Because she voluntarily chose to share with *Rolling Stone* a tale that is indisputably false, and because *Rolling Stone* is expected to claim that it found Jackie believable,[2] ***Jackie's credibility as a source for the magazine is very much at issue in the case***. Plaintiff's document demands are narrowly targeted at demonstrating that Jackie told a false account of her supposed gang rape to *Rolling Stone*, that *Rolling Stone* recklessly disregarded warning signs that Jackie's story was false, that Jackie lacks credibility and was not a reliable

---

[2] *Rolling Stone* and the reporter have in fact asserted lack of negligence and/or actual malice as defenses to Dean Eramo's Complaint, and have also claimed that the *Rolling Stone* story is "substantially true." (July 16, 2015 Answer, *Eramo v. Rolling Stone LLC, et. al.*, No. 3:15-cv-00023-GEC (W.D. Va.) at 77 [W.D. Va. Dkt. 27].)

5

source on which to base such a story, and that *Rolling Stone's* claims regarding Dean Eramo's interactions with Jackie were false. Such evidence is highly relevant to the claims and defenses asserted in the defamation action and Jackie fails to demonstrate otherwise.

Jackie's assertion that the subpoena is overly broad fails because on its face the subpoena seeks only her communications related to a single, discrete event at issue in the underlying litigation — her supposed gang rape on September 28, 2012. Plaintiff could have sought wide-ranging discovery regarding other relevant issues such as Jackie's medical records, her mental health history, and any prior history of falsely claiming to be the victim of a sexual assault. Instead, the subpoena narrowly seeks only the most highly relevant documents going to key issues in the defamation action; namely: (1) what Jackie told Dean Eramo and when; (2) what Jackie told *Rolling Stone* and others about her supposed assault and interactions with Dean Eramo; and (3) what Jackie told certain other individuals about her supposed assault. (*See* Mem. at (Ex. A).) Jackie has completely failed to demonstrate how these requests are in any way overbroad or how conducting a simple search for electronic documents is unduly burdensome.[3] *See Kinetic Concepts, Inc. v. ConvaTec, Inc.*, 268 F.R.D. 226, 249 (M.D.N.C. 2010) (mere assertion of undue burden is insufficient, and must be supported by affidavit or other evidentiary proof of the time or expense involved in responding to a discovery request); *Robinson v, Quicken Loans, Inc.*, No. 3:12-cv-00981, 2012 WL 6045836, *3 (S.D.W.Va. Dec. 5, 2012) (if the information sought by a subpoena is relevant, then an undue burden objection must be supported by affidavit or other proof). The Opposition also glosses over the fact that prior to filing the

---

[3] The cases Jackie cites for her claim that the subpoena is overbroad are inapposite. For example, in *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012), the subpoena sought an entire employment file containing much material "completely extraneous to this litigation." *See* Opp'n at 20. In *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008), the subpoena broadly sought **all** of an individual's emails over a given time period, without any limitation by subject matter. *See* Opp'n at 20. Jackie's Opposition fails to analogize these holdings to Plaintiff's subpoena, which plainly seeks a discrete set of communications related only to highly relevant subject matter.

Motion to Compel, Plaintiff offered to drop certain of the document requests altogether, and to conference regarding the scope of others, but Jackie's counsel refused to negotiate. Instead, Jackie ***flatly refused to produce even a single document*** in response to the validly issued subpoena, necessitating the filing of this motion. (Mem. at 8; *id*. at Ex. D.)

**II.  Federal Rule of Evidence 412 Does Not Apply To The Subpoena.**

Jackie's primary basis for her refusal to produce any documents in response to the subpoena is Federal Rule of Evidence 412. *See* Opp'n at 1-2, 6-8, 11-14. However, both the plain language of Rule 412 and the Advisory Committee Notes discussing its scope demonstrate that it is not applicable to this defamation action or the subpoena seeking documents from Jackie. The underlying defamation action is not a "Sex-Offense Case" or a case "involving alleged sexual misconduct" within the meaning of Rule 412. This is a defamation action, and the Advisory Notes make clear that there is nothing about Dean Eramo's ***defamation*** claims against *Rolling Stone* that triggers Rule 412 because Dean Eramo is not seeking evidence to be offered against a victim of sexual assault. Moreover, even if the defamation case could be construed as involving "sexual misconduct," the subpoena is directed only at Jackie's account of the alleged gang rape that formed the basis of the article — i.e., ***the*** sexual misconduct at issue — and not at any "other" sexual behavior or evidence of a "sexual predisposition." Fed. R. Evid. 412(a). Finally, even if Rule 412 did apply here (it does not), Plaintiff has amply demonstrated that the evidence sought is relevant to the facts and theories set forth by the parties to the defamation action, and therefore must be produced. For all of these reasons, Rule 412 does not exempt Jackie from the requirement that she comply with the subpoena.

> **A. The Advisory Notes Are Clear That Rule 412 Does Not Apply Here Because This Defamation Action Is Not A Sex-Offense Case.**

7

To begin with, Jackie's Opposition fails to address the threshold issue, which is whether Rule 412 applies at all to Dean Eramo's efforts to obtain discovery in support of her defamation action. It does not. Rule 412 states:

> Rule 412: Sex-Offense Cases: The Victim's Sexual Behavior or Predisposition.
>
> (a) **Prohibited Uses**. The following evidence is not admissible in a civil or criminal proceeding *involving alleged sexual misconduct*:
>
> (1) evidence offered to prove that a victim engaged in *other* sexual behavior; or
>
> (2) evidence offered to prove a victim's *sexual predisposition*.

Fed. R. Evid. 412(a) (italicized emphasis added). Dean Eramo's defamation action is not a "Sex-Offense Case[]," or a case "involving alleged sexual misconduct" because there is no "alleged" sexual misconduct being adjudicated within the meaning of Rule 412. Instead, Dean Eramo is asking the District Court to adjudicate the question of whether *Rolling Stone* printed false and defamatory statements about her response to a specific gang rape that did not occur.

Rule 412's Advisory Committee Notes clearly provide that Rule 412 is *inapplicable* in defamation actions, like this one, involving *statements about* sexual misconduct. Rule 412's Advisory Committee Notes provide:

> Rule 412 does not, however, apply unless the person *against whom the evidence is offered* can reasonably be characterized as a 'victim of sexual misconduct.' When this is not the case, as for instance *in a defamation action involving statements concerning sexual misconduct* in which the evidence is offered to show that the alleged defamatory statements were true or did not damage the plaintiff's reputation, *neither Rule 404 nor this rule will operate to bar the evidence* ….

Fed. R. Evid. 412 (Advisory Comm. Notes 1994) (emphasis added); *see also Webber v. Multimedia Entertainment, Inc.*, No. 97 CIV 0682 PKL THK, 1997 WL 729039, *3 (S.D.N.Y. Nov. 24, 1997) (Rule 412 not applicable to a defamation action where putative "victim" could not reasonably be characterized as a victim of sexual misconduct).

8

Here, Dean Eramo is not seeking to discovery evidence from Jackie to offer it against a victim of sexual assault. She has not filed an action against Jackie. And Jackie is not a party to the lawsuit. Instead, Plaintiff seeks evidence from Jackie to use against *Rolling Stone* — a publication that cannot "reasonably be characterized as a 'victim of sexual misconduct'" — to prove the falsity of *Rolling Stone's* claims that Dean Eramo sought to cover up a gang rape on UVA's campus. This is precisely the situation the Advisory Notes recognize is ***not*** covered by Rule 412.

### B. This Defamation Action Involves A False Account Of Sexual Assault.

Moreover, the only "sexual misconduct" remotely at issue in the litigation is the false account of the gang rape at Phi Kappa Psi on September 28, 2012, as reported by *Rolling Stone*, ***which indisputably did not occur***. The story Jackie related to *Rolling Stone* was investigated at length by the Charlottesville Police Department, which issued a detailed press release concluding that there was ***no evidence*** that the sexual assault recounted by Jackie occurred, that the supposed assault could not have occurred when and where Jackie said it occurred, that Jackie did not suffer the supposed physical injuries she claimed to have suffered, that the alleged perpetrators do not exist, and that Jackie told others a completely different story than the tale she told *Rolling Stone*. (*See* attached Ex. A). Innumerable media reports have found further discrepancies and outright falsehoods in Jackie and *Rolling Stone's* account. Notably, although Jackie's Opposition repeatedly refers to her as a "victim of sexual assault," ***at no time*** does Jackie claim in her Opposition that the supposed gang rape at Phi Kappa Psi on September 28, 2012 — the only incident relevant to this Motion — actually occurred.

### C. Even If This Were A Sex-Offense Case, Rule 412 Only Prohibits Introduction Of Evidence Of Jackie's *Other* Sexual Behavior — Not Evidence Regarding The Underlying Sexual Misconduct Itself.

9

Even if the Court were to find that this is somehow a case "involving alleged sexual misconduct," Jackie incorrectly assumes that Rule 412(a) bars all discovery relating to whether her tale of a fraternity gang rape is true without any reference to, or analysis of, the actual language of Rule 412. By its plain terms Rule 412(a) bars admission (but not discovery) of two types of evidence: (1) evidence offered to prove that a victim engaged in "other sexual behavior"; and (2) evidence offered to prove a victim's "sexual predisposition." Fed. R. Evid. 412(a). Dean Eramo's subpoena is plainly not directed at any evidence regarding Jackie's "sexual predisposition," and Jackie does not argue that it is. *See, e.g., Truong v. Smith*, 183 F.R.D. 273, 274 (D. Colo. 1998) (Rule 412(a)(2) refers to the attempted introduction of evidence regarding a victim's lifestyle or mode of dress offered to show that a victim is promiscuous); *see also* Fed. R. Evid. 412(a) (Advisory Comm. Notes 1994) ("This amendment is designed to exclude evidence that does not directly refer to sexual activities or thoughts but that the proponent believes may have a sexual connotation for the factfinder."). Thus, the only question is whether the subpoena is directed at evidence regarding whether Jackie engaged in "other sexual behavior." It is not.

Jackie's interpretation of Rule 412(a)(1) is incorrect because by its plain terms ***Rule 412 does not bar discovery regarding the "alleged sexual misconduct" at issue in the case***; rather, it bars the admission of evidence regarding "***other sexual behavior***." The Advisory Committee Notes to Rule 412 make it abundantly clear that subdivision (a)(1) refers to attempts to introduce evidence of "past sexual behavior" for the purpose of suggesting that the victim was promiscuous or consented to the alleged sexual misconduct at issue. Indeed, the Notes expressly state that "the word 'other' is used to suggest some flexibility in admitting evidence 'intrinsic' to the alleged sexual misconduct." Fed. R. Evid. 412 (Advisory Comm. Notes 1994); *see also*

*Sheffield v Hilltop Sand & Gravel Co., Inc.*, 895 F. Supp. 105, 108 (E.D. Va. 1995) ("'Sexual behavior' includes all activities, ***other than those 'intrinsic' to the alleged misconduct***….") (emphasis added)*; Truong*, 183 F.R.D. at 274 ("First, Rule 412 bars the admission of evidence 'offered to prove that any alleged victim engaged in other sexual behavior.' 'Sexual behavior' includes all activities, ***other than those 'intrinsic' to the alleged misconduct***, that involve sexual intercourse or sexual contact.…") (citing references omitted) (emphasis added). The document requests in the subpoena relate only to the supposed fraternity gang rape that Jackie recounted to *Rolling Stone*, as well as to evidence suggesting that it was fabricated, and do not in any way seek evidence of Jackie's "other sexual behavior." They seek evidence regarding ***the*** alleged sexual misconduct — the supposed gang rape at Phi Kappa Psi — as well as evidence intrinsic to that alleged occurrence, in order to show that the story in the *Rolling Stone* article was a fabrication, and should have been discovered by *Rolling Stone* as such. Rule 412 does not even bar the ***admissibility*** of such evidence, let alone the discovery of it.

In fact, the only case that Jackie cites for support of her interpretation of the scope of Rule 412 demonstrates the sharp difference between evidence regarding "the alleged sexual misconduct" and evidence regarding "other sexual behavior." (*See* Opp'n at 11-12.) In *Doe v. Salisbury Univ.*, No. CIV. JKB-15-517, 2015 WL 5005811 (D. Md. Aug. 21, 2015), two male students who were expelled based on a female student's allegation of sexual assault sued the school and the victim for, among other things, defamation. *Id*. at *1. In the footnote cited by Jackie, the court noted that the plaintiffs' pleadings "regularly describe Defendant Jane Doe # 1's alleged sexual behavior, preferences, and reputation ***prior to the alleged sexual assault that forms the basis of this lawsuit***. The parties are reminded and cautioned that Federal Rule of Evidence 412 bars the admission of certain evidence 'offered to prove that a victim engaged in

11

other sexual behavior' or 'offered to prove a victim's sexual predisposition.'" *Id*. at *13 n. 9 (citing references omitted) (emphasis added). That is the purpose and scope of Rule 412 — it prohibits the admission of evidence offered to prove that the alleged victim engaged in *other sexual behavior* that is not intrinsic to the sexual misconduct at issue in the case.

Simply put, Jackie cannot have it both ways. If she contends that this is a case "involving alleged sexual misconduct" within the meaning of Rule 412, then the "alleged sexual misconduct" at issue is by definition her supposed gang rape on September 28, 2012. Rule 412 on its face does not preclude admissibility of evidence regarding *that* "alleged sexual misconduct" — let alone discovery of it — but rather only prohibits the admissibility of evidence offered to prove that Jackie engaged in "other sexual behavior," or "evidence offered to prove [Jackie's] sexual predisposition." Fed. R. Evid. 412(a). The subpoena does not seek either prohibited category of evidence, and Jackie does not argue that it does.

### D. Rule 412 Addresses the *Admission* of Evidence Against a Victim at Trial — Not Discovery of Evidence Via a Third Party Through a Subpoena.

Even if the Court determines that this defamation case is somehow a proceeding involving sexual misconduct, and even if this Court finds that Rule 412 somehow addresses evidence regarding the sexual misconduct directly at issue rather than "other sexual behavior" not at issue, Rule 412 still does not bar *discovery* from Jackie. The Federal Rules of Evidence are of course rules of admissibility rather than rules of discovery, and the Notes to Rule 412 make this clear by stating that "[t]he procedures set forth in subdivision (c) do not apply to discovery of a victim's past sexual conduct or predisposition in civil cases, which will be continued [sic] to be governed by Fed. R. Civ. P. 26." Fed. R. Evid. 412 (Advisory Comm. Notes 1994). The Notes then advise that, with respect to discovery, a protective order under Federal Rule of Civil Procedure 26(c) is not warranted if "the party seeking discovery makes a

12

showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery." *Id*. As has been amply demonstrated in Plaintiff's Memorandum and in this Reply, evidence that Jackie fabricated the fraternity gang rape and her subsequent interactions with Dean Eramo is plainly relevant to both Plaintiff's claims and *Rolling Stone's* defenses in the defamation action. Such evidence is only available through discovery from Jackie because it is ***Jackie*** that weaved the false tale to a national magazine and claimed to be a victim of an event that did not occur. Plaintiff cannot depose the supposed perpetrators of the gang rape recounted in the *Rolling Stone* article, because by all indications they do not exist. Plaintiff cannot depose any witnesses to the alleged gang rape at Phi Kappa Psi, because by all indications there was nothing to witness. The story originated solely with Jackie and the best way to prove it conclusively false is through discovery from Jackie herself.

### III. Jackie's Other Privilege Claims Lack Merit.

Finally, Jackie's Opposition superficially suggests that several other privileges may protect her communications from disclosure, but she fails to provide any analysis or showing that any such privileges are actually applicable here. (*See* Opp'n at 14-17.) For instance, Jackie baldly claims that "Dean Eramo admittedly seeks evidence protected from disclosure by the University under Family Educational Rights and Privacy Act (FERPA)," and that "Dean Eramo did not contest" that FERPA applies to the subpoena to Jackie. (Opp'n at 15-16.) This is demonstrably false. Plaintiff made clear to Jackie's counsel in her pre-filing correspondence that FERPA applies only to disclosure of a student's records ***by the student's educational institution***, and has no applicability whatsoever to a subpoena directed to an ***individual*** like Jackie. (Mem., Ex. D at 2); 34 C.F.R. § 99.1 (FERPA's restrictions on disclosure apply to educational agencies and institutions which receive federal funds). Whatever applicability FERPA may have to

13

*Rolling Stone's* discovery requests directed to the University of Virginia, it has no application to the instant subpoena to Jackie.

If an individual communicates certain events to a university official, FERPA does not make discovery of the underlying facts of that sexual assault privileged from discovery from that individual herself — just as a client's communication to a lawyer about the underlying facts of an event does not cloak those facts in a privilege that is immune from discovery from the client or other third parties. *See, e.g., In re Allen*, 106 F.3d 582, 604 (4th Cir. 1997) (underlying information does not become privileged from disclosure in discovery because it is communicated to an attorney).[4] Jackie cites no provision of FERPA (or any other law) that says otherwise, and instead attempts to shift the burden to Dean Eramo to demonstrate that FERPA does not apply. But FERPA contains no prohibition on discovery from an individual student, so Jackie's argument is little more than an illogical demand that Dean Eramo prove a negative. It is also an impermissible attempt to shift the burden to Dean Eramo when it is indisputably Jackie's burden to demonstrate the applicability of any claimed privilege. *See, e.g., Bulow v. Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) ("It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are essential elements of the privileged relationship.").

Similarly, Jackie argues that she and Dean Eramo had a patient-counselor relationship that prohibits Dean Eramo from disclosing contents of certain of their communications. (*See* Opp'n at 15.) But again, aside from failing to demonstrate that such a privilege applies to any

---

[4] Jackie's Opposition claims that it "makes no sense" that FERPA would restrict the University's ability to disseminate Jackie's records but have no applicability to a subpoena served directly on Jackie herself. (Opp'n at 16). In fact such a result is quite common in the law of privilege, as in the example of attorney-client privilege, as noted. Another example is the reporter's privilege, which in certain instances can prevent a party from obtaining information communicated by a source to a reporter ***from the reporter***, but does not in any way restrict a party's ability to subpoena the same information directly from the source himself. *See, e.g., Palandjian v. Pahlavi*, 103 F.R.D. 410, 413 (D.D.C. 1984) (reporter's privilege belongs to and applies to the news agency, but the same information can be obtained directly from the source himself as he has no privilege against disclosure).

14

interactions between Dean Eramo and Jackie,[5] Jackie cites no statute or case law suggesting that communications in ***Jackie's*** possession are not subject to production in response to a valid subpoena to her. Even if the issue here was Dean Eramo's documents rather than Jackie's, Jackie fails to explain how she has not waived any such privilege by voluntarily sharing the contents of her communications with Dean Eramo — including actual copies of their email correspondence — with Rolling Stone. *See, e.g., U.S. v. Bolander*, 722 F.3d 199, 223 (4th Cir. 2013) (a patient waives the patient-psychotherapist privilege by voluntarily disclosing the substance of therapy sessions to third parties). Ultimately, Jackie fails to demonstrate the applicability of any privilege generally, and she fails to demonstrate the applicability of any privilege to any specific documents at issue, because she has not produced a privilege log as required by Federal Rule of Civil Procedure 45(e)(2).

Finally, Jackie argues that the Motion to Compel is premature because the parties to the case have not yet produced documents. (*See* Opp'n at 21-22.) Not only does Jackie fail to explain why this is at all relevant to the Motion to Compel, but she is also incorrect. The parties have in fact exchanged substantial document productions, and other third parties have already produced documents. Discovery in the case has been ongoing for months, and is set to conclude in March. There is no reason why Plaintiff should have to wait any longer for Jackie to comply with a subpoena that has been outstanding for four months.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in her Memorandum, Nicole Eramo, Plaintiff in the case of *Eramo v. Rolling Stone LLC, et al.*, No. 3:15-cv-00023-GEC, currently

---

[5] This statute applies to "programs" and associated persons "providing services to victims of sexual or domestic violence…," and defines those "programs" as "public and non-profit agencies the primary mission of which is to provide services to victims of sexual or domestic violence." Va. Code § 63.2-104.1(A). The statute also permits such disclosure in response to a court mandate — such as a subpoena. *Id*. at 104.1(C).

15

pending in the United States District Court for the Western District of Virginia, respectfully requests that the Court enter an order directing Jackie to comply with the subpoena attached as Exhibit A to the Memorandum.

Dated: December 2, 2015

Respectfully submitted,

By: */s/ Thomas A. Clare*
Thomas A. Clare (VA Bar No. 39299)
Elizabeth M. Locke (VA Bar No. 71784)
CLARE LOCKE LLP
902 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com

*ATTORNEYS FOR PLAINTIFF NICOLE ERAMO*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Nicole Eramo's Reply Brief in Support of her Motion to Compel Nonparty Respondent Jackie to Comply with Rule 45 Subpoena was served on the below counsel on December 2, 2015, via ECF (for those attorneys that have registered), or by email (for those attorneys that have not).

Billy B. Ruhling, II
DimuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
Telephone: (703) 684-4333
Email: bruhling@dimuro.com

Pat A. Cipollone
Rebecca R. Anzidei
Philip J. O'Beirne
Stein Mitchell Cipollone Beato & Missner LLP
1100 Connecticut Avenue N.W., Suite 1100
Washington, D.C. 20036
Telephone: (202) 737-7777
Fax: (202) 296-8312
Email: pcipollone@steinmitchell.com
pobeirne@steinmitchell.com
Email: ranzidei@steinmitchell.com

Palma Pustilnik
Staff Attorney
Central Virginia Legal Aid Society
1000 Preston Avenue, Suite B
Charlottesville, VA 22903
Telephone: (434) 327-1443
Fax: (434) 296-5731
Email: palma@cvlas.org

*Attorneys for Nonparty Respondent "Jackie"*

Michael John Finney
William David Paxton
Gentry Locke Rakes & Moore
P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9373

Telephone: (540) 983-9334
Fax: (540) 983-9400
Email: finney@gentrylocke.com
Email: paxton@gentrylocke.com

Elizabeth A. McNamara
Samuel M. Bayard
Davis Wright Tremaine LLP
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Fax: (212) 489-8340
Email: lizmcnamara@dwt.com
Email: samuelbayard@dwt.com

Alison B. Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4248 Fax: (202) 973-4448
E-mail: alisonschary@dwt.com

*Attorneys for Defendants Rolling Stone LLC,
Sabrina Rubin Erdely, and Wenner Media LLC*

Dated: December 2, 2015     By: */s/ Thomas A. Clare*_____
                                 Thomas A. Clare